THE HEBREW UNIVERSITY ASSOCIATION *v.* GEORGE
O. NYE ET AL., EXECUTORS (ESTATE OF ETHEL
S. YAHUDA)

SUPERIOR COURT      NEW HAVEN COUNTY      FILE No. 88456
AT NEW HAVEN

Memorandum filed September 12, 1966

*Louis Feinmark,* of New Haven, for the plaintiff.

*Resnik & Driscoll,* of New Haven, for defendants Nye and Resnik, executors of the estate of Ethel S. Yahuda.

*Herman S. Hodes,* of New Haven, for defendants Rivlin and Yahuda, special trustees under the will of Ethel S. Yahuda.

PARSKEY, J. Most of the facts in this case are recited in *Hebrew University Assn.* v. *Nye,* 148 Conn. 223. Additionally, it should be noted that at the time of the announcement of the gift of the "Yahuda Library" the decedent gave to the plaintiff a memorandum containing a list of most of the contents of the library and of all of the important books, documents and incunabula. At some time prior to the summer of 1954 and during the lifetime of Mrs. Yahuda, the Hebrew University began the project of erecting its library. As a part of its effort to finance the construction of the library, the Hebrew University adopted a plan whereby various portions or rooms in the library were assigned certain respective money values, thereby permitting a person desiring to contribute toward the construction of such building, by making a contribution of the amount so assigned for such portion of the building or room, to have it dedicated to himself or some person designated by him. In setting up this plan for the library building, the Hebrew University designated a room in the building as the Yahuda room and indicated upon its plan that such room was not open for subscription or contribution because it had already been assigned for the Yahuda collection. The assigned value of this room was $21,600. By thus removing such room from possible subscription or contribution, the Hebrew University deprived itself of a possible source of substantial revenue.

The plaintiff claims a gift inter vivos based on a constructive or symbolic delivery, and alternatively that because of the decedent's conduct and the plaintiff's action in reliance thereon the defendants are

estopped to deny the gift. As to the latter claim, if the plaintiff is in truth claiming an estoppel in pais the short answer to this claim is that equitable estoppel is available only for protection and cannot be used as a weapon of assault. *Robinson* v. *Atterbury,* 135 Conn. 517, 520. In addition to the first theory there are, however, two other theories upon which the plaintiff may prevail. These are constructive trust based on action in reliance on a promise to make a gift and constructive trust arising out of an ineffective conveyance of an intended gift made by one who has died believing that he has made an effective gift. These theories will be discussed seriatim.

## I

### CONSTRUCTIVE DELIVERY

A gift inter vivos is complete when there is an intention to give, accompanied by a delivery of the thing given and an acceptance by the donee. *Camp's Appeal,* 36 Conn. 88, 92. It is not necessary that there should be a manual delivery of the thing given; nor is there any particular form or mode in which the transfer must be made or by which the intention of the donor must be expressed. *Main's Appeal,* 73 Conn. 638, 640. While the change of possession may be either actual or constructive, it must be such as is consistent with the nature of the property and the situation of the parties. *Leadenham's Estate,* 289 Pa. 216, 220. For a constructive delivery, the donor must do that which, under the circumstances, will in reason be equivalent to an actual delivery. It must be as nearly perfect and complete as the nature of the property and the circumstances will permit. *Hebrew University Assn.* v. *Nye,* 148 Conn. 223, 232. The gift may be perfected when the donor places in the hands of the donee the means of obtaining possession of the

contemplated gift, accompanied with acts and declarations clearly showing an intention to give and to divert himself of all dominion over the property. *Candee* v. *Connecticut Savings Bank,* 81 Conn. 372, 375. It is not necessary that the method adopted be the only possible one. It is sufficient if manual delivery is impractical or inconvenient. *Gray* v. *Watters,* 243 Iowa 430, 436. Constructive delivery has been found to exist in a variety of factual situations: delivery of keys to safe deposit box; *Lawrence* v. *Hartford National Bank & Trust Co.,* 24 Conn. Sup. 419, 429; pointing out hiding places where money is hidden; *Waite* v. *Grubbe,* 43 Ore. 406, 410; informal memorandum. *Matter of Roosevelt,* 190 Misc. 341, 345 (N.Y.).

Examining the present case in the light of the foregoing, the court finds that the delivery of the memorandum coupled with the decedent's acts and declarations, which clearly show an intention to give and to divest herself of any ownership of the library, was sufficient to complete the gift. If the itemized memorandum which the decedent transmitted had been incorporated in a formal document, no one would question the validity of the gift. But formalism is not an end in itself. "Whatever the value of the notion of forms, the only use of the forms is to present their contents." Holmes in Justice Oliver Wendell Holmes—His Book Notices and Uncollected Letters and Papers, p. 167 (Shriver Ed.). This is not to suggest that forms and formalities do not serve a useful and sometimes an essential purpose. But where the purpose of formalities is being served, an excessive regard for formalism should not be allowed to defeat the ends of justice. The circumstances under which this gift was made—a public announcement at a luncheon attended by a head of state, accompanied by a document which identified in itemized form what was

being given—are a sufficient substitute for a formal instrument purporting to pass title.

## II

### Constructive Trust—Action in Reliance

If it be assumed that there was an insufficient constructive delivery to consummate the gift, the question arises whether the facts justify the imposition of a constructive trust. It is undisputed that the decedent intended to give the Yahuda Library to the Hebrew University. Her purpose in so doing was to establish a "centre for Biblical and Semitic research and a meeting place for scholars" as a memorial to her illustrious husband, Professor Abraham Shalom Yahuda. She had reason to expect that the plaintiff would act in reliance on the eventual delivery of the library. In fact it did so act. It removed from the fund-raising market a room which was set aside to house the Yahuda collection. "A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." Restatement, 1 Contracts § 90. In examining factual situations under this section, Corbin suggests that courts should not arrive at a just answer by any deductive logic or by a mechanical jurisprudence but instead should exercise experienced judgment based on a knowledge of the ways and feelings of men and of the social mores of the time. 1A Corbin, Contracts § 200, p. 216.

Courts cannot be oblivious to the techniques of fund raising for charitable purposes. It is no small task to build a university library. Plans must be made, architects employed, cost estimates arrived

at, fund-raising committees named, solicitations made. The key to any such fund raising is the knowledge of the insatiable human desire to perpetuate one's name in brick and marble. "The longing for posthumous remembrance is an emotion not so weak as to justify us in saying that its gratification is a negligible good." *Allegheny College* v. *National Chautauqua County Bank*, 246 N.Y. 369, 377. Substantial sums of money are pledged and paid for suitable plaques on doors, rooms, wings and buildings. The setting aside of a room in a university library is no small matter. The withdrawal of such a room from the fund-raising market for a considerable period of time in reliance on a promise that it will house a valuable collection of rare books is a matter of substance. The conditions justifying the application of § 90 of the Restatement of the Law of Contracts are present.

### III

#### Constructive Trust—Ineffective Conveyance By Decedent

There is authority for the proposition that where an owner of property makes an ineffective conveyance of it as an intended gift he will not ordinarily be compelled to complete the gift, but if he dies believing that he has made an effective gift and if the donee was a natural object of his bounty, such as a wife or child, the donee can obtain the aid of the court of equity to complete the gift as against the heirs or next of kin. 1 Scott, Trusts (2d Ed.) § 31.5; Restatement, Restitution § 164. The question here presented is whether the rule should be extended to cover gifts to charities. "It is now fully recognized as a rule of our jurisprudence that gifts to charitable uses are to be highly favored, and will be most liberally construed in order to accomplish the intent of the donor, and trusts for

such purposes may be established and carried into effect where, if not of a charitable nature, they could not be supported." *Woodruff* v. *Marsh,* 63 Conn. 125, 136; *Coit* v. *Comstock,* 51 Conn. 352, 377.

Although it is true that even in the case of a charity an imperfect gift will not be turned into a declaration of trust for no better reason than that it is imperfect; *Organized Charities Assn.* v. *Mansfield,* 82 Conn. 504, 510; there is ample reason on the facts of this case for equity to impose a constructive trust. It is abundantly clear from the evidence that Ethel Yahuda wanted to house her husband's collection of rare books and manuscripts in a single repository so that they might be easily accessible to scholars. Yet if this collection remains part of the estate the trustees, who are directed under the second clause of will to sell, call in and convert into money such parts of the trust as shall not consist of money, may have no alternative but to sell these books and documents piecemeal, in which event the library may be scattered over universities and colleges throughout the world. The net effect would be to frustrate the foundation which Ethel Yahuda established in the fifth clause of her will, for of what value would be a foundation in Israel, one of the purposes of such foundation being to complete the publication of the work of decedent's husband, if the source material was scattered? Rules of law must, in the last analysis, serve the ends of justice or they are worthless. For a court of equity to permit the decedent's wishes to be doubly frustrated for no better reason than that the rules so provide makes no sense whatsoever. "[T]he plastic remedies of the chancery are moulded to the needs of justice." *Foreman* v. *Foreman,* 251 N.Y. 237, 242. Who is helped by completing the gift to the plaintiff? The plaintiff, obviously; scholars, of course; the Ethel Yahuda foundation, to be sure.

Who is hurt? No one. According to the will, after the specific bequests the remainder of the estate is to be converted into money and this money is to be used to establish Ethel Yahuda's foundation. The Yahuda library, however, is essential if the foundation is to serve the purpose for which it is founded. By the housing of the library at the Hebrew University, the decedent's wishes will be carried out in full.

The court recognizes, in arriving at this result, that it is abrogating in some respects the requirement of delivery in a case involving an intended gift inter vivos. Obviously, it would be neither desirable nor wise to abrogate the requirement of delivery in any and all cases of intended inter-vivos gifts, for to do so, even under the guise of enforcing equitable rights, might open the door to fraudulent claims. But neither does it mean that the present delivery requirement must remain inviolate. "Equity is not crippled . . . by an inexorable formula." *Marr* v. *Tumulty,* 256 N.Y. 15, 21. If it be argued that hard cases make bad law, the short response is, not while this court sits. The facts of this case are so peculiarly suited for an extension to charities of the rule applicable to family settlements; *McCall* v. *McCall,* 3 Day 402; that the court can find no good reason for not so extending it.

Accordingly, judgment may enter declaring that the plaintiff is the legal and equitable owner of the "Yahuda Library" and has a right to the immediate possession of its contents.