Genevieve B. CAREY, Appellant (Plaintiff),

v.

James K. JACKSON, Appellee (Defendant).

No. 5123.

Supreme Court of Wyoming.

Dec. 7, 1979.

Rehearing Denied Jan. 3, 1980.

George S. Andrews, W. Perry Dray, and Rocklon L. Edmonds, Cheyenne, signed the brief. Andrews and Dray appeared in oral argument on behalf of the appellant.

Bernard O. Phelan and Rodger McDaniel (Legal Intern), Cheyenne, signed the brief and Phelan appeared in oral argument on behalf of the appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS, ROSE, and ROONEY, JJ.

RAPER, Chief Justice.

The central issue presented by this appeal is whether written gift agreements purporting to transfer certain items of personal property from mother to daughter are sufficient in themselves to constitute a valid gift inter vivos where there was no manual delivery of the items of personal property. Upon a special verdict of the jury which found that Bernice Jackson did not give the items listed in the gift agreements to her daughter, Genevieve B. Carey, the plaintiff-appellant in this case, the district court entered judgment denying the appellant's claim for relief.[1]

We will reverse the judgment of the district court.

1. The court appears to have denied relief to both parties—left them where it found them. Appellant sought to determine her ownership and to replevy the property in question. Appellee sought a determination that it was his property. This matter is addressed to this court by appellant, thus:

"The verdict of the jury, * * * failed, in effect, to determine whether the items contained in the gift agreement were either the Appellant's or the Appellee's."
And the appellee:
"The jury returned a verdict which determined that the appellant * * * did not own the property contained on the gift agreements upon which the appellant grounded her claim of ownership. No other determination was made by the jury as to ownership."

The claims and facts of this case are exceedingly detailed and complex and the course of this litigation was tortuous and unnecessarily circuitous. The appellant is the daughter of Bernice Jackson by a marriage which predated Bernice Jackson's marriage to the appellee. Appellant's natural father died in an accident in 1932. Bernice Jackson was married to the appellee in 1941. During the early years of the Jacksons' marriage, appellant lived with them and shared their home. Throughout her life, appellant was very close to her mother. In 1951, appellant was married to Joseph M. Carey and she lived with him and apart from her mother until his death in 1958. After the death of her husband, appellant again began living with her mother and the appellee. In 1961, a home was purchased by the parties to this dispute. Appellant provided the down payment for the house and the home was deeded to the appellant, her mother, and the appellee as joint tenants with right of survivorship. Appellant paid one-half of the mortgage payments, and sometimes all of them from 1962 through 1977. The three lived together in that house until 1965 when an adjoining piece of property came up for sale. Appellant purchased the property and moved into it and made her home there.[2] Appellant continued to be a part owner of the first home which was occupied by her mother and the appellee, left many of her possessions there, had a key to that home, and visited her mother virtually every day until her death in 1975.

Appellant claimed ownership of the items by gift and appellee claimed ownership by reason of the items being the property of his wife. Since the judgment granted relief to neither party, no disposition was made of the items here in dispute and it appears that the items would be a part of Bernice Jackson's estate and would have been distributed from her estate if the judgment was left undisturbed.

2. Almost all of the furnishings placed in the first home were provided by the appellant out of furnishings which she herself owned or acquired through the estates of her husband and mother-in-law. The ownership of these furnishings was also in dispute in this case but the disposition of the district court in regard to those furnishings is not questioned here.

On July 3, 1969, the appellant and her mother signed a gift agreement which purported to make a gift from mother to daughter of some 23 pieces of jewelry and a set of Spode China. This agreement was prepared by an attorney with whom both the appellant and her mother consulted:

"WHEREAS, Bernice E. Jackson, hereinafter called the Donor, is the owner and in possession of certain articles of personal property located in Laramie County, Wyoming, and

"WHEREAS, it is Donors [sic] intention to give said articles, irrevocably, to her daughter, Genevieve B. Carey, hereinafter called the Donee, and

"WHEREAS, it is Donees [sic] intention and wish to receive and accept said articles as an irrevocable gift,

"NOW THEREFORE Donor and Donee, as mother and daughter, do hereby agree as follows:

"1) Donor hereby agrees to give and by these presents does hereby voluntarily give and transfer all her right, title and interest in and to the following described personal property to Donee; to-wit,
[List of items deleted.]

"2) Donee hereby, upon delivery to her of said articles and upon execution, delivery and receipt of this instrument, accepts said articles as a gift.

"3) Both parties further agree that Donee may, at her option, loan any or all of said articles to Donor for her temporary use of the same, and agree that any future delivery of any of said articles to Donor shall not in any manner affect the validity of this transfer as a gift and is not intended to re-transfer ownership or title of said articles.

"Dated, signed and delivered this 3rd day of July, 1969.
　　　"/s/ Bernice E. Jackson
　　　DONOR
"/s/ E. L. Patrick
WITNESS
　　　"/s/ Genevieve B. Carey
　　　DONEE

"Subscribed and sworn to before me, a Notary Public, this 3rd day of July, 1969.
　　　"/s/ Marguerite Offutt
　　　NOTARY PUBLIC
"SEAL
　　"My Commission Expires Jan. 18, 1970."

Most of the items of jewelry, listed in the agreement, were gifts from the appellant to her mother and the china was a gift largely from the appellee to his wife, though some pieces were gifts from others to Mrs. Jackson.[3] It is undisputed that the items listed in the agreement remained in the home occupied by the Jacksons until after the death of Mrs. Jackson and that no formal manual delivery of them was ever made to the appellant. The appellant did, on occasion, make use of some items of the jewelry and she had free access to and knowledge of the combination of the safe where the jewelry was kept.

On November 16, 1971, the appellant and her mother entered into a second gift agreement whereby Mrs. Jackson purported to make a gift to the appellant of her collection of cut glass antiques. This agreement was typed by the appellant using the 1969 gift agreement as a model and was signed by the appellant and Mrs. Jackson at a Cheyenne hospital just before Mrs. Jackson was to have major surgery:

"WHEREAS, Bernice E. Jackson, hereinafter called the Doner [sic], is the owner and in possession of certain articles of personal property located in Laramie County, Wyoming, and

"WHEREAS, it is Donors [sic] intention to give said articles,' [sic] irrevocably, to her daughter, Genevieve B. Carey, hereinafter called the Donee, and

"WHEREAS, it is Donees [sic] intention and wish to receive and accept said articles as an irrevocable gift,

"NOW THEREFORE Donor and Donee, as mother and daughter, do hereby agree as follows:

3. No issue is raised as to whether Mrs. Jackson had such right, title and interest in the items so as to enable her to give them away, although it appears fairly clear that she did.

"1) Donor hereby agrees to give and by these presents does hereby voluntarily give and transfer all her right, title and interest in and to the following described personal property to Donee: to-wit, [List of items deleted.]

"2) Donee hereby, upon delivery to her of said articles and upon execution, delivery and receipt of the instrument, accepts said articles as a gift.

"3) Both parties further agree that Donee may, at her option, loan any or all of said articles to Donor for her temporary use of the same, and agree that any future delivery of any of said articles to Donor shall not in any manner affect the validity of this transfer as a gift and is not intended to retransfer ownership or title of said articles.

"Dated, signed and delivered this 16th day of November [sic] 1971.

"/s/ Bernice E. Jackson
DONOR
"/s/ Sister Mary Concetta
WITNESS
"/s/ Genevieve B. Carey
DONEE"

Many of the items included on this list were also gifts from the appellant to her mother. Some were gifts from others to Mrs. Jackson. Many were purchased by Mrs. Jackson herself while accompanied by the appellant and the appellee. It is also undisputed that these items remained in the home occupied by the Jacksons and were still there at the time of Mrs. Jackson's death and that they were kept in a mahogany breakfront which belonged to appellant. No formal manual delivery was ever made to the appellant of any of these items.[4]

The sole issue we have to decide in this case is whether there was sufficient delivery by the agreements as a matter of law of the items listed in the two gift agreements so as to constitute a valid and binding inter vivos gift from Mrs. Jackson to the appellant. If the gift agreements, considered in conjunction with all undisputed facts, are sufficient as a matter of law to constitute a gift, then the appellant was entitled to a directed verdict or judgment notwithstanding the verdict on this issue at the close of all the evidence. This is so because the only issue to be resolved was the issue of delivery. Were the agreements enough to constitute delivery? All other issues with regard to the validity of the gifts were resolved against the appellee or were waived by the appellee. The only issue presented to the jury was whether or not appellant's mother gave appellant the items listed in the gift agreements[5] and that issue revolved solely around the issue of delivery.[6]

4. It is a matter of dispute as to whether Mr. Jackson was aware of these gift agreements. But no issue is raised in that regard and so we do not consider what pertinence his knowledge, or lack thereof, might have on this case.

5. The special verdict form presented questions to the jury and they answered as indicated:
"Question 1: Did Bernice E. Jackson give the jewelry and spode china listed on the Gift Agreement, dated July 3, 1969, to Genevieve B. Carey?
"Answer: /s/ NO
"(Proceed to Question 2)
"Question 2: Did Bernice E. Jackson give all of the cut glass located in the break-front cabinet to Genevieve B. Carey?
"Answer: /s/ NO
"(Proceed to Question 3)
"Question 3: Did Bernice E. Jackson give all the cut glass listed in the Gift Agreement, dated November 17, 1971, to Genevieve B. Carey?
"Answer: /s/ NO
* * *"

6. That the issue is so narrowly drawn is clear not only from a close reading of the transcript but from the instructions that were given to the jury:
"INSTRUCTION NO. 5
"A gift is a voluntary transfer of property by one person to another without any consideration or compensation therefor. In other words, title, ownership, or right of possession is equally as effective when property passes by gift as when it passes by purchase or otherwise. Thus, if any of the items of personal property in controversy passed to the plaintiff or defendant by gift, then those items are his or her property unless they in turn were given or sold by either of them to someone else."
"INSTRUCTION NO. 6
"In order for you to find that plaintiff's mother made a valid gift of the items listed in gift agreements to plaintiff, plaintiff must establish by clear and convincing evidence:
"1. That Bernice Jackson (plaintiff's mother) was at the time of the alleged gift of

There are two considerations which bear upon the determination of this issue. First, this court has twice dealt with questions of delivery in the context of a gift. Neither has much in common with the case at bar, but from them appellee asserts there is derived a rule which absolutely *requires* manual delivery if such is possible or convenient. The first of these cases is *Begovich v. Kruljac*, 1928, 38 Wyo. 365, 267 P. 426, 60 A.L.R. 1046. In that case this court, on its way to holding that the gift in question was a valid gift causa mortis, made some general statements about gifts inter vivos:

" * * * In gifts inter vivos the primary intent and purpose is to give immediate control of and dominion over the property of the donee. The intent to give is not sufficient. It must be fully and completely carried out. * * * No gift is made, unless it was perfected by actual delivery, fully and completely giving dominion over, and control of, the subject of the gift during the donor's lifetime to the donee. * * * Hence while in gifts inter vivos delivery is one of the constituent elements thereof, it subserves but the purposes of evidence in gifts causa mortis." 267 P. at 429.

The court surmised that the root of the controversy in that case was that the parties had confused the two, i. e., gifts inter vivos and causa mortis. Obviously, the court's statements about gifts inter vivos are dicta, were made in a most general sense, and certainly were not intended, nor could they serve, as the established black letter law for Wyoming on the question of gifts inter vivos.

The second case in which gifts inter vivos were discussed was *Beck v. Givens*, 1957, 77 Wyo. 176, 309 P.2d 715, reh. den. 77 Wyo. 191, 313 P.2d 977. In that case this court made a comment similar to the observation we make—the statements of the *Begovich* court are general and in the nature of dicta. That court then considered the need for actual delivery in the context of an inter vivos gift of sheep made by delivery of a bill of sale from the donor-father to the donee-daughter. The court in that case particularly pointed out that the authority cited by the respondent (appellee) in his brief militated against his position that a valid gift had not been consummated:

" 'The later cases appear to support the rule that no delivery of a tangible chattel or security is necessary to a gift thereof

sound mind, that is, she knew and understood the effect of her act and intended that effect; [*]

"2. That Bernice Jackson either actually delivered the gift to Genevieve Carey; or

"3. That because it was impractical to manually deliver said items, the gift agreement was delivered as a constructive delivery of the gift;

"4. That by such act she intended to pass title to the property in question to plaintiff to take effect immediately;

"5. That plaintiff actually accepted said items as a gift."

[* This was not in dispute (by this court).] (Bracketed material added.)

"INSTRUCTION NO. _7_

"The jury is instructed that for there to be a valid gift there shall be the intention to give immediate control of and dominion over the property to the donee, by the donor, acceptance by the donee and actual physical delivery of the articles given or some act accepted by the law in lieu thereof."

"INSTRUCTION NO. _8_

"YOU ARE INSTRUCTED that generally it *is necessary that actual delivery of the gift to* the donee occur in order to consummate a

gift when the subject of the gift is capable of manual delivery; but where manual delivery of the property cannot be made, the delivery of an instrument may constitute a constructive delivery of the gift so as to meet the legal requirements of delivery."

"INSTRUCTION NO. _10_

"YOU ARE INSTRUCTED that the language of the purported gift agreements is unambiguous.

"You may utilize only the plain meaning of the words and language found in the instruments themselves to determine the intent of Bernice E. Jackson as to intention to make gifts and to require actual delivery of the articles, or constructive delivery of the articles by mere delivery of the instruments to the plaintiff.

"You may not interpret the language of the instruments in terms of what you feel the parties might have wanted to say but did not. In other words, you should not speculate as to the intent of the parties which is not expressed in the instruments themselves."

In setting out these instructions, it is not intended to approve or disapprove any or all but only as an aid in isolating the issues of the case now before us.

where the gift is evidenced by a formally executed and delivered deed or other instrument under seal, and the same appears to be true where the written instrument relied upon, although not under seal, is a formally executed assignment or bill of sale of the property.' Annotation, 48 A.L.R.2d 1405, 1407.

" 'A gift inter vivos of tangible chattels or securities may be sustained even in the absence of delivery of the property, where the gift is evidenced by a formal instrument purporting to transfer the property.

" 'The above rule would also appear to be supported by those cases * * * holding that an informal instrument was sufficient to support the gift.' Annotation, 48 A.L.R.2d 1405, 1409." 309 P.2d at 719.

The court then went on to say:

" * * * Generally it is held that an actual delivery is necessary for the consummation of a gift either inter vivos or causa mortis when the subject is capable of manual delivery; but where manual delivery of the property cannot be made, the delivery of an instrument constitutes a symbolic or constructive delivery of the gift so as to meet the legal requirements. See 24 Am.Jur., Gifts §§ 24, 26, 27. * * " Id.

The court then held that the bill of sale in the *Beck* case was sufficient delivery since livestock fit clearly under the cited rule and found a valid inter vivos gift. Once again, the rule that was cited in *Beck* is most general and is, at least in part, dicta. If the rule there stated were to be accepted as the law of this state, it would reject many other principles of the law of gifts, some of which were cited by that court (see Annotation, 48 A.L.R.2d 1405). Obviously the rule is cited in the context of saying that the facts of this case come within the contemplation of *this* rule—and not that *this* rule is the sole guiding light for all decisions which deal with the question of gifts inter vivos.

In the case at bar, we have two formal instruments which are signed and witnessed. One of them is notarized. Both are in the nature of deeds and both state that the property listed on them is a transfer of all right, title and interest that the donor has in that property to the donee. The second consideration, then, which bears upon our determination is whether the language in paragraph 2 of the gift agreements requires manual delivery in addition to the transfer provisions. It is undisputed that the gift instruments were delivered to the appellant at the time they were signed and that they were in her possession at the time of Mrs. Jackson's death. Paragraph 2 reads:

"2) Donee hereby, *upon delivery to her of said articles* and upon execution, delivery and receipt of this instrument, accepts said articles as a gift." (Emphasis added.)

Appellee asserts that this language required an actual, manual delivery above and beyond that which was achieved by merely delivering the instruments. Since the articles listed in the gift agreements remained at rest in the donor's home, appellee asserts that there was no delivery as required by the gift agreements themselves, as well as by the Wyoming cases previously discussed, and therefore there was no complete gift.

▆▆▆ With this we do not agree. The requirement of delivery is based upon public policy and convenience and constitutes a means of preventing mistake, imposition, and perjury. 38 Am.Jur.2d Gifts § 20, p. 822. The requirement of delivery is especially applicable to parol gifts. However,

"It is generally held that an actual delivery is necessary for the consummation of a gift either inter vivos or causa mortis when the subject of the gift is capable of manual delivery; otherwise, there must be such a delivery as the nature and situation of the subject sought to be given reasonably permits, and this delivery must clearly manifest the donor's intention to divest himself of title and possession. *It is usually considered sufficient if the donor has put it in the power of the donee to take possession, or if the donee can take possession without committing a trespass. It is also*

*generally well settled that actual and personal delivery by the donor is not necessary when a donee is already in possession and the intention to surrender all right to the property is fully and clearly manifested,* or when a person other than the donor is the custodian, and he is instructed to deliver to the donee. \* \*"
Id. at p. 823. (Emphasis added and footnotes omitted.)

Mrs. Jackson's possession of the gift items was not only clearly and unambiguously explained by the gift agreement but additionally by the undisputed facts presented at the trial. See 38 Am.Jur.2d, Gifts § 27. The law of gifts will take into contemplation that the appellant and her mother were members of a family and, for all intents and purposes, lived in the same house. See, 38 C.J.S. Gifts § 23, p. 803. Moreover, the appellant had free access to her mother's home as well as a possessory interest in that home. She had a key to the house where they were located and the items gifted to her were freely accessible to her. A daughter is the natural object of her mother's bounty and this is especially so where the daughter so carefully and generously looked out for her mother's welfare and provided daily companionship.[7]

We have found a number of well-reasoned and sound cases which support our conclusion. The case most directly in point for purposes of our analysis here is *Lewis v. Burke,* 1967, 248 Ind. 297, 226 N.E.2d 332. Although the proceedings had in that case were pursuant to a probate statute,[8] the facts were remarkably similar and the legal questions to be answered were virtually identical. In the *Lewis* case, the donor of personal property went to her attorneys and had drafted a letter which stated that she wanted the recipients (donees) of the letter to have the furnishings in her home. At her death the donor still had the furnishings in question in her home. The executor

of the donor's estate contended that there was no delivery and, hence, no gift; but the court said:

"Historically, in the days when few people could write, formal ceremonies and physical acts, in the presence of witnesses were given legal significance. Delivery of personal property was one form of making a gift or of transferring title. This was true in the case of real estate, where livery of seisin was necessary to transfer ownership of real estate. As people became more literate and writing become more common, deeds and written instruments replaced largely these physical ceremonies and were found to be more reliable in demonstrating the intentions of the parties with reference to transferring title. In those early days people relied on seals to make a written instrument genuine and authentic. Sealed instruments were so inviolate in early law that once a seal was attached to a writing it was held that not even fraud or forgery could be shown to avoid its effectiveness. The seal was conclusive of the intent of parties. Since people have become more literate, the seal has lost its immutability, but the execution of a writing as the expression of the intentions of parties is still of highest importance in the law. \* \* \*" 226 N.E.2d at 335.

In Wyoming, as in Indiana, the legislature has eliminated the need for a seal on a written instrument to give it an elevated and an unusual position of credibility. Section 34–2–126, W.S.1977. This has been so since the inception of our state. Laws 1890, Ch. 71, § 2. The Indiana Supreme Court continued, reasoning:

"In the case before us under the statute, therefore, this letter prepared by attorneys for the purpose of effecting a valid gift has the same significance legally as if it were a sealed instrument. In other words, is a gift by deed or other

---

7. We point out for purposes of clarity that while a claim of undue influence was alleged by appellee's answer, absolutely no evidence was placed in the record to even suggest the presence of undue influence, and no such issue was presented to the jury.

8. The probate statute used was designed to achieve precisely what appellant sought to achieve in this case, i. e., replevy personal property. See, 226 N.E.2d at 334.

instrument under seal of physical personal property valid in the State of Indiana? This letter and the instrument in question are in the present tense, purporting to divest the owner of title effective immediately. It is not a gift causa mortis or testamentary in character, to take effect in the future, although it has two witnesses, as in the case of a will. We can consider it only as an act in the present.

"It is urged that the law requiring only an actual physical delivery is a safeguard against fraud or impulsive promises. We are unable to follow such reasoning, particularly where a party goes into a law office and after consultation with attorneys, prepares the instrument in question and in this case, in the presence of two witnesses. To us it appears the action taken in this case is one to prevent any question of fraud. On the other hand, the physical possession of property, which must be explained by oral testimony of witnesses after the death of an individual, opens the door to more possibilities than does the written instrument in the present case.

"Some attempt has been made in the argument to distinguish transfers of title to personal property by bills of sale, gifts made of intangible personal property and trusts done by way of a written instrument, from the facts in the case before us. We see no reason for making any distinction. If those engaged in business and commercial transactions have found written instruments sufficient to convey title without physical delivery of possession, we see no reason why persons desiring to make a gift should be deprived of the benefits of the same principle of law.

"It is almost universally recognized in all jurisdictions under Anglo-American law that a person may give physical personal property by means of a written instrument expressing a present intent to make the transfer of title immediately. This may be done without delivery of the personal property if, at the time, the written instrument or deed of gift, as it is sometimes called, is delivered to the donee.

" 'It is almost uniformly held that a gift inter vivos or causa mortis may be effected by writing without delivery, where the writing is a deed or instrument under seal.' 24 Am.Jur., Gifts, § 33 (1939).

" 'Where the gift is evidenced by a writing executed by the donor, delivery of the writing is a sufficient delivery to support the gift.' 38 C.J.S. Gifts § 22b (1943).

" 'It is almost universally held that a gift by instrument in writing is good without a delivery of the property, where the instrument is a deed or is under seal.' 63 A.L.R. 537, 540.

"A later annotation in A.L.R.2d states:

" 'The later cases appear to support the rule that no delivery of a tangible chattel or security is necessary to a gift thereof where the gift is evidenced by a formally executed and delivered deed or other instrument under seal, and the same appears to be true where the written instrument relied upon, although not under seal, is a formally executed assignment or bill of sale of the property.' 48 A.L.R.2d 1405, 1407.

"Indiana has recognized this rule:

"In *Crawfordsville Tr. Co. v. Elston Bank & Tr. Co.* (1940), 216 Ind. 596, 625, 25 N.E.2d 626, 637, it is stated:

" ' * * * Actual physical delivery of the object of the gift is not required. The delivery may be either actual, constructive or symbolical. *Richards v. Wilson,* supra [185 Ind. 335, 112 N.E. 780], recognized that such gift might be made *by a deed without delivery.* (Our italics)' [Bracketed material added by this court.]

"We therefore conclude that the law in Indiana is such that gift or transfer of title to tangible as well as intangible personal property may be made by written instrument (or deed of gift) stating a present intent. This may be done without a physical delivery of the property at the time, if the written instrument is delivered." 226 N.E.2d at 335–336.

Other cases provide similar parallels. See *Rorabaugh v. Garvis,* 1977, 198 Neb. 223, 252 N.W.2d 161; *In re Estate of Wintermann,* Mo.1973, 492 S.W.2d 763; and *Hebrew University Association v. Nye,* 1966, 26 Conn.Sup. 342, 223 A.2d 397. We are especially convinced that here, as in other of the cases cited above, that " \* \* \* '[w]hen the clear intention of the donor to make a gift can be carried out without doing violence to the established principles of law the court should not seek highly technical reasons for defeating the gift." *Rorabaugh v. Garvis,* supra, 252 N.W.2d at 164.

The delivery of the items listed in the gift agreements was made at the time the gift agreements were delivered to the appellant. The language of paragraph 1 of each of the gift agreements is unmistakably clear in transferring a present interest to the appellant. Paragraph 2 of each of the agreements is concerned with the appellant's acceptance of the gifts which she does state in positive terms without reservation. The provision of the agreement, paragraph 3, confirms the complete transfer by indicating that a loan of the gifted property to the donor would not divest the donee's title. Whatever possession the donor had was at most only a loan by the terms of the agreement itself. Under the circumstances of this case, the delivery of the gift agreements performed the need for the delivery of the articles as provided in paragraph 2. A contract must be considered as a whole and the intent of the parties gathered from all its parts. *Shepard v. Top Hat Land & Cattle Co.,* Wyo.1977, 560 P.2d 730.

At the close of the appellee's case, appellant moved the court to direct a verdict in her favor pursuant to Rule 50(a), W.R.C.P. The oral motion was presented to the court in great detail and the specific grounds were made clear to the court. A written memorandum supplemented the oral motion. Setting out the specific grounds for such a motion is a *mandatory* requirement of the rule.[9] 9 Wright and Miller, Civil, § 2533, p. 579; see, *Brown v. Sievers,* Wyo. 1966, 410 P.2d 574. The motion was denied. The appellant then presented some brief testimony in rebuttal. This is now wholly consistent with the rule in question. 9 Wright and Miller, Civil, § 2534, pp. 588–589. When the evidence was closed, all motions were renewed and denied. After the verdict was rendered by the jury, appellant filed a written motion for judgment notwithstanding the verdict pursuant to Rule 50(b), W.R.C.P. This motion was also denied and a judgment was entered. The proceedings followed in the district court were wise:

"Even at the close of all the evidence it may be desirable to refrain from directing a verdict though it would be possible to do so. If a verdict is directed and the appellate court holds that the evidence was in fact sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is greatly expedited. If the jury agrees with the court's appraisal of the evidence, and returns a verdict for the party who moved for a directed verdict, the case is at an end. If the jury brings in a different verdict, the trial court can grant judgment notwithstanding the verdict. Then if the appellate court holds that the trial court was in error in its appraisal of the evidence, it can reverse and order judgment on the verdict of the jury, without any need for a new trial. For this reason the appellate courts have repeatedly said that it is usually desirable to take a verdict, and then pass on the sufficiency of the evidence on a post-verdict motion." (Footnote omitted.) 9 Wright and Miller, Federal Practice and Procedure, Civil, § 2533, p. 586.

"THE COURT: I don't think it's necessary that you argue. I'm going to deny the motion.

"MR. PHELAN: Thank you, Your Honor. I lost my memorandum anyway."

9. Although the court had considered the question throughout the trial, the exchange at the close of appellant's motion perhaps belies that the court seriously weighed the motion:

The purpose of Rule 50, W.R.C.P., which is identical to the federal rule, is to provide a device of judicial control so that the court may enforce rules of law.

"* * * It allows the court to take away from the consideration of the jury cases in which the facts are sufficiently clear that the law requires a particular result. * * *" Id. at Civil § 2521, p. 537.

The test to be applied when determining the question of sufficiency of the evidence on a motion for directed verdict is whether the evidence is such that, without weighing the credibility of the witnesses, or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. *Barnes v. Fernandez*, Wyo.1974, 526 P.2d 983. See *Ramirez v. Metropolitan Life Ins. Co.*, Wyo.1978, 580 P.2d 1136. In determining whether a verdict should have been directed, the supreme court upon review must consider the evidence favorable to the party against whom the motion is directed, giving to it all reasonable inferences. *Barnes v. Fernandez*, supra, 526 P.2d at 983.

"In determining whether a verdict should have been directed, the appellate court applies the same standard as does the trial court in passing on the motion originally. * * * Whether a verdict should be directed is a question of law and on those questions litigants are entitled to full review by the appellate court without special deference to the views of the trial court." 9 Wright and Miller, Federal Practice and Procedure, Civil, § 2536, p. 595, and § 2524, pp. 541–542.

Grant of such a motion should be cautiously and sparingly granted. Id., § 2524, p. 542. However, a scintilla of evidence is not enough to avoid the granting of such a motion, and the question is not whether there is *no* evidence supporting the party at whom the motion is directed but rather "* * * whether there is evidence upon which the jury could properly find a verdict for that party." Id., § 2524, p. 542; See *Brennan v. Laramie Newspapers, Inc.*, Wyo. 1972, 493 P.2d 1044. Where the court has considered and wisely denied motion for summary judgment, the grant of a directed verdict may still be proper:

" 'When, however, both parties have had an opportunity to adduce all relevant, available evidence so that the trial court is no longer uncertain as to the circumstances of the case, then slight doubt as to the facts is insufficient to avert a directed verdict or a judgment notwithstanding the verdict.' " 9 Wright and Miller, Federal Practice and Procedure, Civil, § 2532, p. 578.

Under the circumstances of this case, we must hold that the trial court erred in failing to enter judgment for the appellant notwithstanding the verdict. The gift agreements were, by themselves as a matter of law, sufficient to complete the gift from Mrs. Jackson to the appellant. The construction of a contract is for the court, not the jury, absent disputed facts. *Yeats v. Estate of Yeats*, 1978, 90 Wash.2d 201, 580 P.2d 617. The trial judge here permitted the jury to decide a question of law. Appellee presented no evidence whatsoever to challenge the gift agreements.[10] Rather he chose to stand on the ground that the failure of Mrs. Jackson to manually deliver the items listed on the gift agreements caused the gifts to fail. As a result there was no issue for the jury to decide. As a matter of law delivery was achieved by way of the written instruments and no further delivery was required. Though not necessary to our decision, appellant's position is strengthened and verified in that she was a part owner of the home in which they were located and had free access to the gifts, all of which was not in dispute.

The judgment of the district court is reversed and remanded with directions to vacate its judgment with respect to the gifts and enter judgment for appellant settling

10. We note, without deciding, that a question may have arisen if appellee had wished to present evidence to contradict the written gift agreements, because of the application of the parol evidence rule.

title in and commanding delivery to her of the property described in the gift agreements by writ of replevin.

ROONEY, Justice, specially concurring, with whom McCLINTOCK, Justice, joins.

I concur with the three determinations of the majority of the court which are pertinent to this case. Those are:

1. Absent statutory requirement to the contrary,[1] delivery of a tangible chattel or security is not necessary to an inter vivos gift thereof where the gift is evidenced by a formally executed document or instrument, which document or instrument is itself delivered. (See cases cited in support thereof in majority opinion.)

2. The intent of the parties in this case can be ascertained from the instruments themselves. (In Instruction No. 10, the court stated that the language therein "is unambiguous."[2] The instruments as a whole can be said to reflect an other than literal meaning to the phrase "upon delivery to her of said articles" in paragraph 2 of the instruments.)[3]

3. Therefore, the issue relative to the intention of the parties or construction of the instruments was one of law and should not have been submitted to the jury.

However, I do not agree with the possible suggestion in the majority opinion that attention could be given to other facts adduced at trial in making this determination.[4] There is no question but that if resort to extraneous evidence is necessary in interpretation of the ambiguous or doubtful terms or language of a contract, the question is one for the jury under proper instructions. *Horvath v. Sheridan-Wyoming Coal Co.*, 58 Wyo. 211, 131 P.2d 315 (1942); *Worland School District v. Bowman*, Wyo., 445 P.2d 364 (1968), appeal after remand, 531 P.2d 889 (1975).

---

1. E. g., § 31–4–309, W.S.1977, re motor vehicles; §§ 34–21–701 et seq., W.S.1977, re warehouse receipts; §§ 34–13–101, et seq., W.S. 1977, re Gifts to Minors Act, etc.

2. See footnote 6 in majority opinion.

3. This conclusion can be made in the face of the testimony of the lawyer who drew up the instrument that "I felt that when I prepared it and gave it to them, it was sufficient as long as they complied with whatever physical things that they had to do to complete the gift."

4. If there was ambiguity in the language of the instruments, there are a number of disputed facts for resolution by the jury in ascertaining the intention, such as, purchase of the Spode china and cut glass by appellee or both appellee and appellant rather than by only appellant, and its ownership before the death of Mrs. Jackson by appellee *and* Mrs. Jackson and not only by Mrs. Jackson. The delivery of the jewelry to appellant "for temporary" use. Appellant's acknowledgment of no residence in the house since 1965 as distinguished from partial possession (not ownership) for twelve years prior to the death of Mrs. Jackson, etc.