## EDWARD LAWLER *v.* DOLORES LAWLER
### (5702)

DUPONT, C. J., NORCOTT and FOTI, Js.

Argued May 31—decision released September 13, 1988

*Lloyd Frauenglass,* for the appellant (plaintiff).

*Raynald B. Cantin,* with whom, on the brief, was *David M. Askinas,* for the appellee (defendant).

NORCOTT, J. The plaintiff appeals, challenging the financial orders rendered by the trial court incident to the judgment dissolving his marriage to the defendant. He claims that the trial court erred (1) in providing for automatic increases in periodic alimony payments reflecting cost-of-living increases without requiring a showing of a change in circumstances, (2) in concluding that the plaintiff had access to certain business

income and in rendering orders based on that determination, (3) in making periodic alimony payments nonmodifiable until the defendant reaches the age of sixty-two, (4) in rendering orders that required the plaintiff to remain at his present workplace until age sixty-two, and (5) in awarding attorney's fees to the defendant. We find no error.

The facts pertinent to this appeal are as follows. The plaintiff and the defendant were married in Wassaic, New York, on March 22, 1954, and again, in another ceremony, in Hartford on April 24, 1954. At the time of the marriage, the plaintiff was a student at Trinity College and was employed part-time at Emerson Radio of Connecticut, where he and the defendant, who worked at Emerson as a secretary, first met.

Prior to his graduation in 1955 with a bachelor of science degree in mathematics, the plaintiff was offered, and subsequently accepted, a job at United Aircraft, which later became the United Technologies Corporation (UTC). He continued his education by receiving two masters degrees in mathematics and management and has since worked continually at UTC.

The defendant had completed only two years of high school at the time of the marriage but subsequently completed her high school education by attending adult evening classes at Hartford High School. She stopped working outside of the home when the couple's first child was born in 1958. The couple had two more children, one born in 1961 and another born in 1964. The defendant's primary responsibility was the care of the children and the family home, while the plaintiff remained the "chief breadwinner."

Immediately after the marriage, the plaintiff became involved in various business ventures. After teaching part-time in various places, he began to invest in a series of restaurants in 1972. The plaintiff initially invested

$15,000 to $20,000 in a restaurant in Nanuet, New York, and, after selling his interest therein and doubling the return on this investment, he again invested $15,000 to $20,000 in a restaurant in Torrington. In 1978, he sold this interest and realized a profit of $20,000; he then reinvested $60,000 in the New York restaurant, known as Charlie A's Steakhouse and described in his financial affidavit as Saturn Pub and Kosamar Properties (Saturn-Kosamar).

The defendant became involved in a small clothing design store, Milana Designs (Milana), which was located in the Hartford Civic Center. Although the plaintiff allowed the defendant the use of $3000 to start the business, he was never supportive of it, and the business has never been much of a success. The store "pays the bills" but does not even provide the defendant with a salary.

The trial court concluded that the plaintiff was the sole cause of the breakdown of the marriage. The plaintiff admitted that he became involved in an adulterous affair in 1983 and continued similar relationships thereafter. The plaintiff admitted calling his wife and children vulgar names in private and in public, and the evidence revealed that as punishment for various misbehaviors he would refuse to talk to the offending child for months at a time. The record also reveals that he encouraged at least one child to be dishonest by showing him how to switch price tags at a gift store. It also is evident from the record that despite the defendant's belief that the marriage could be saved, the plaintiff was continually deceitful to her and was contemptuous of her ambitions, endeavors and emotional state.

## I

The plaintiff's first claim of error concerns the court's award of periodic alimony. The court's award of periodic alimony provides that "the plaintiff shall pay peri-

odic alimony to the defendant in the amount of $480 per week, starting November 14, 1986 and continuing to February 1, 1998. The $480 figure will automatically be increased on a weekly basis by a cost-of-living factor and the cost-of-living factor will be based upon 60 percent of the percentage of the gross increase which the plaintiff actually receives from his employer. The increase shall continue each year until the alimony either ceases or reduces as herein below ordered.

"AND THAT, said alimony might modify earlier than the February 1, 1998 date if on or after February 1, 1995, the plaintiff retires. Until February 1, 1995, said alimony award shall not reduce. On February 1, 1995, or after, if the plaintiff retires, the alimony shall automatically reduce to $1200 per month. Again, said reduction shall take place no sooner than February 1, 1995. The $1200 will automatically be increased annually, or monthly, but on an annual review basis, again increasing by 60 percent of the annual percentage increases that the plaintiff receives on his pension from UTC. In other words, the defendant shall receive a percentage increase equivalent to 60 percent of the plaintiff's percentage increase."

The parties did not have a stipulation or settlement agreement between them as to periodic alimony, and nowhere in the record does it reflect that the parties themselves had negotiated for a cost-of-living adjustment as part of an alimony award. The plaintiff contends that the trial court erred in awarding automatic increases in periodic alimony payments without requiring any showing of a change in circumstances as required by statute regarding the modification of alimony orders. We disagree.

The question raised in the first claim of error is one with which our appellate courts have not expressly dealt to date. That question is whether the trial court may

include in a periodic alimony award a future share in the spouse's earned income should it be increased at some point in the future. We find that the trial court may make such an award.

General Statutes § 46b-82[1] authorizes the trial court to order alimony and to determine "the duration and the amount of the award." The term "alimony" is not defined in the statute. Our Supreme Court, however, has often stated "that the type and amount of alimony awarded under a decree dissolving a marriage is within the sound discretion of the trial court." (Citations omitted.) *Rubin* v. *Rubin,* 204 Conn. 224, 233, 527 A.2d 1184 (1987).

In *Rubin,* our Supreme Court held that an award to a spouse of a share of the other spouse's prospective acquisition of another person's property cannot be upheld either as a transfer of property or as alimony.[2] While *Rubin* is factually inapposite to the present case,

---

[1] General Statutes § 46b-82 provides in pertinent part: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of the minor children has been awarded, the desirability of such parent's securing employment."

[2] In *Rubin,* the trial court made certain financial awards including an order that the plaintiff pay the defendant one third of the net estate that he might receive either as a residuary beneficiary of his mother's revocable inter vivos trust or by way of inheritance from her. Our Supreme Court held that evidence of the plaintiff's prospective acquisition of this property was inadmissible.

the following dicta in it is most illuminating: "[W]e are not aware of any principle of law that necessarily precludes a trial court, in exercising its discretion to fashion an alimony award, from ordering a payment that is contingent upon some future event. Such contingent awards often appear in judgments that have incorporated agreements of the parties that provide for adjustment of the amount of support or alimony to be paid in relation to the earnings of the parties . . . . We do not regard the consent of the parties to be essential to the validity of a contingent alimony award, although it may be relevant to the wisdom of such an order." Id., 233–34.

The plaintiff contends that the *Rubin* decision requires that we invalidate the court's award of periodic alimony in the present case in that the award here is analogous to the contingent assignment of expected property in *Rubin*. We disagree. Unlike the situation in *Rubin*, the plaintiff's prospective pay increases here relate to his own income rather than to the expectancy of a beneficiary interest in a third person's property. Here, the defendant's periodic alimony is tied to the prospective increase in salary of the plaintiff. To allow the trial court to provide in the dissolution decree for future adjustments in periodic alimony is consistent with the well established principle "that an alimony order is predicated upon the obligation of support that spouses assume toward each other by virtue of the marriage"; id., 234; rather than by virtue of some potential inheritance.

The simple reality of the trial court's award is that, if the plaintiff receives no raise, the defendant gets no increase in her periodic alimony; if his pay increases, her periodic alimony increases consistent with the order in the original decree. We are not persuaded that the holding in *Rubin* compels us to find that the plaintiff's future increase in salary here is analogous to the

"potential inheritance" which was the subject of the *Rubin* case. We conclude that the *Rubin* case speaks to the impermissibility of allowing expectancies of future interests in the property of a third person to be a basis for transfers of property under General Statutes § 46b-81. That case does not involve an award of periodic alimony such as the one at issue in the present case. The trial court did not err.

## II

The essence of the plaintiff's second claim of error involves the trial court's response to his motion for articulation, which requested that the court state what it determined the parties' respective incomes to be at the time of the dissolution. As part of its response, the court stated that, with respect to the plaintiff's restaurant business income, it believed the plaintiff to have "actually received cash payments far in excess of the payments he acknowledged in his testimony or he at least, had access to those payments." The plaintiff urges us to upset the entirety of the financial awards made by the trial court because, he contends, there was no basis in the evidence upon which the court could have made such a finding.The plaintiff attacks both the amount of periodic alimony awarded and the division of a business asset on this ground. We disagree.

Our review of decisions regarding financial awards in dissolution cases is confined to two questions: "(1) whether the court correctly applied the law; and (2) whether it could reasonably have concluded as it did." *Mailly* v. *Mailly,* 13 Conn. App. 185, 188–89, 535 A.2d 385 (1988). It is not our function to retry the facts. *Palazzo* v. *Palazzo,* 9 Conn. App. 486, 488, 519 A.2d 1230 (1987).

We first note that in the present case, the trial court did not base its financial awards on the plaintiff's outside business income. Our review of the court's order

and its articulation indicates that the court applied the statutory criteria set forth in General Statutes § 46b-82 and made its financial awards accordingly. Notwithstanding the confusing status of the plaintiff's restaurant business income, the trial court had a sufficient basis in the evidence of the plaintiff's and defendant's principal sources of income (UTC and Milana) to make its alimony award. While the evidence suggested that the plaintiff's income from Milana was meager at best, the court reasonably found the plaintiff's income from UTC to be $63,000 per year plus certain pension benefits. Even with the deduction of the court's alimony award, the plaintiff was left with a disposable income of approximately $663 per week, which did not take into account unspecified money that the court found to be at his disposal from Saturn-Kosamar. In this light, the confusion concerning these investments worked to the plaintiff's benefit.

It is clear from the record that the court carefully considered the defendant's total blamelessness with respect to the breakup of the marriage, her age, vocational skills and needs, and the gross disparity between the parties' earning capacities and financial status. We will not disturb the trial court's awards of alimony where the court correctly applied the law after carefully reviewing the evidence presented. See *Mailly* v. *Mailly,* supra, 189; see also *Griffiths* v. *Griffiths,* 12 Conn. App. 807, 808, 531 A.2d 1203 (1987).

The trial court went on to divide the marital assets pursuant to General Statutes § 46b-81.[3] The plaintiff argues that the court's reliance on the business as an asset was in error.

---

[3] General Statutes § 46b-81 provides in pertinent part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third

The record reveals that the trial court considered the following evidence relevant to this claim of error: (1) the 1985 tax return of Saturn-Kosamar, which did not comport with the plaintiff's trial testimony regarding the annual income grossed by the business; (2) a virtual lack of documentation that would accurately reveal the plaintiff's interest in the business; and (3) the plaintiff's testimony regarding the unreported taxable income he received from the business.

Additionally, pursuant to General Statutes § 46b-81, the court heard an abundance of testimony from several witnesses concerning Saturn-Kosamar. Those witnesses included the plaintiff and the defendant's expert witness, an accountant who testified on the basis of information regarding the annual gross receipts of the business. The defendant claimed that the plaintiff owned a 20 percent interest in Saturn-Kosamar. The plaintiff disclaimed any knowledge of the exact percentage of interest in Saturn-Kosamar owned by himself. The trial court made no finding as to the actual percentage owned by the plaintiff.

The court chose not to credit the plaintiff's testimony that he, a college graduate with a degree in mathematics and two postgraduate degrees, (1) did not follow the bookkeeping practices of his partners at Saturn-Kosamar, (2) was systematically "robbed" of his investment by his crooked partners, and (3) received no financial benefit from his investment other than the small weekly stipend he claimed he was paid for his weekend work at the restaurant. The court concluded that the plaintiff's testimony regarding the business investment was illusory and accorded the plaintiff virtually no credibility.

person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

Notwithstanding the above, the court was loath to enter an order that expressly required the plaintiff to pay a dollar figure of alimony based on income from an investment that "may have no dollar value." Acknowledging that "[t]he biggest problem in this case is Saturn and Kosamar," the court ordered the liquidation and equal division of the plaintiff's interest, if any. The actual amount that might be realized from the plaintiff's interest was unknown to the court, but the trial court had the discretion pursuant to the dictates of General Statutes § 46b-81 so to divide this asset. Such divisions of assets, including the liquidation and division of the marital home, are commonplace in dissolution decrees.

There is no indication in the record that the amount of periodic alimony was in any way dependent on any income from the business but rather was based on the plaintiff's salary from his regular employment at UTC. Even though the court articulated its disbelief of the plaintiff's testimony with respect to his business investment, it did not base any order on anything improper. Accordingly, the plaintiff's second claim of error must fail.

### III

The plaintiff's third and fourth claims of error are interrelated. The plaintiff claims error in that the trial court, in effect, punished him (1) by making the periodic alimony payments nonmodifiable until February 1, 1995, the date of the plaintiff's projected retirement age of 62, and (2) by making an order that forced the plaintiff into a form of involuntary servitude. Both claims require little discussion.

In the present case, the court ordered the plaintiff to pay periodic alimony starting November 14, 1986, and continuing to February 1, 1998. The judgment file provided: "[s]aid alimony might modify earlier than

the February 1, 1998 date if on or after February 1, 1995, the plaintiff retires. Until February 1, 1995, said alimony award shall not reduce.''

At the November 7, 1986 hearing the trial court explained this order as follows: ''The alimony might modify earlier than the February 1, 1998 date if on or after February 1, 1995, he retires. But up until February 1, 1995, the alimony award will not reduce; therefore, if he chooses to retire at age fifty-five, he's going to have to deal with that at that time, whether coming back to Court for a modification, which may not be considered, since I've considered this in rendering this decision, or some other means.''

It is clear from this order that the court left open the possibility for modification by the plaintiff *after* February 1, 1995, should he opt for early retirement at age fifty-five, but precluded modification before that date.

General Statutes § 46b-86 (a) clearly permits the trial court to make periodic awards of alimony nonmodifiable. Provisions for nonmodification are generally not favored, but to be upheld they must be clear and unambiguous. *Calorossi* v. *Calorossi,* 4 Conn. App. 165, 168, 493 A.2d 259 (1985); *Bronson* v. *Bronson,* 1 Conn. App. 337, 339, 471 A.2d 977 (1984). ''If the decree is meant to be nonmodifiable, it must contain language to that effect. *Cummock* v. *Cummock,* 180 Conn. 218, 222–23, 429 A.2d 474 (1980); *Lilley* v. *Lilley,* 6 Conn. App. 253, 256, 504 A.2d 563 (1986).'' *Neal* v. *Neal,* 7 Conn. App. 624, 625, 510 A.2d 210 (1986).

Here, it is abundantly clear that the trial court ordered the periodic alimony award to be nonmodifiable. The court's order follows the statutory guidelines and is not an abuse of the discretion allowed to the court. We find nothing in the record that leads us to conclude that we should upset that order.

Next, with respect to the plaintiff's claim that the court erroneously abused its discretion by establishing a retirement age of sixty-two, and thereby forcing him to work until that age, we find that this claim is completely without merit. Any award of periodic alimony based on a party's income or earning capacity requires that party to continue work or find other sources of income to meet the obligations of the court's order. Except for the wealthy, employment is often needed to comply with those obligations, and, to this extent, any order awarding alimony can be said to preclude retirement.

"In family matters, the court exercises its equitable powers. The balancing of equities is a matter which falls within the discretion of the trial court. *Kakalik* v. *Bernardo,* 184 Conn. 386, 395, 439 A.2d 1016 (1981). For that reason, equitable remedies are not bound by formula but are molded to the needs of justice. *Hebrew University Assn.* v. *Nye,* 26 Conn. Sup. 342, 348–49, 223 A.2d 397 (1966)." *Oneglia* v. *Oneglia,* 14 Conn. App. 267, 271–72, 540 A.2d 713 (1988). The court did not abuse its discretion in making the award of alimony payments.

## IV

The plaintiff's final claim is that the trial court erred in awarding attorney's fees to the defendant.

As a part of its final judgment, the trial court awarded the defendant $6000 in counsel fees. In addition, the court ordered the plaintiff to pay one-half of the attorney's fee to be incurred in litigation regarding the equal division of the Saturn-Kosamar interests. The plaintiff contends that the court erroneously (1) failed to follow the statutory criteria of General Statutes § 46b-82, (2) did not consider the plaintiff's lack of resources, and (3) failed to make a finding of reasonableness. We disagree.

The trial court exercises broad discretion in determining whether to allow counsel fees, and, if so, in what amount. In exercising that discretion, the court must consider the statutory criteria set out in General Statutes §§ 46b-62 and 46b-82 and the respective financial abilities of the parties. *Elliott* v. *Elliott,* 14 Conn. App. 541, 547, 541 A.2d 905 (1988); see also *Voloshin* v. *Voloshin,* 12 Conn. App. 626, 631–32, 533 A.2d 573 (1987). The court is not obligated to make an express finding on each of the statutory criteria. *Mihalyak* v. *Mihalyak,* 11 Conn. App. 610, 619, 529 A.2d 213 (1987).

The basis for the award of counsel fees was set forth in the court's memorandum of articulation dated June 2, 1987, as follows: "Once again, based upon all the relevant statutory criteria, which the Court followed in this case, the evidence presented, and the respective needs and abilities of the parties to pay, the Court felt that the award of counsel fees was fair and reasonable." Notwithstanding the court's comment on November 7, 1986, that it was "not making a finding on reasonableness," we find that the evidence supports the conclusion that the award of counsel fees was indeed "reasonable" as later expressed in the court's articulation.

Our careful review of the entire record indicates that, in awarding counsel fees, the court duly considered all the relevant statutory criteria in light of the evidence in the case. In doing so, the court did not abuse its discretion.

There is no error.

In this opinion the other judges concurred.