NATIONAL CRUDE, INC., a Wyoming Corporation, and Judith Ruhl, Individually, and as personal representative of the Estate of David H. Ruhl, deceased, Appellants (Defendants),

v.

Geri L. RUHL, Appellee (Plaintiff).

No. 5048.

Supreme Court of Wyoming.

Sept. 17, 1979.

Michael A. Maycock, Maycock & Anderson, Gillette, and Kunz & Waugh, Ltd., Phoenix, Ariz., for appellants.

Rex O. Arney, and Tom C. Toner, Redle, Yonkee & Arney, Sheridan, and Richard V. Campana, Scottsdale, Ariz., for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

McCLINTOCK, Justice.

The present appeal stems from a dispute concerning a gift of shares of stock. Geri L. Ruhl, plaintiff, filed suit seeking to have a stock certificate canceled and to have the shares of stock reissued. This appeal raises three issues: (1) whether the trial court had jurisdiction over a nonresident defendant; (2) whether there was a gift of stock to the plaintiff; and (3) whether the court properly invoked the doctrine of estoppel. We find that the court did have jurisdiction; however, we have concluded a gift was not made to the plaintiff and that the doctrine of estoppel is not applicable, and therefore reverse.

Geri L. Ruhl brought the present action against National Crude, Inc. and Judith Ruhl to cancel a stock certificate issued to Judith Ruhl, and to establish that plaintiff owned 2,400 shares of stock in National Crude, Inc. After a trial to the court, the trial judge found that the plaintiff was

entitled to 2,400 shares of stock in National Crude, Inc., and that the defendant was estopped from asserting her right to total ownership of the corporation.

Sometime in July of 1975 Geri Ruhl's now-deceased husband, David Ruhl, decided to incorporate his company. David Ruhl contacted his attorney and the necessary steps for incorporation were undertaken. Articles of Incorporation were filed and a Certificate of Incorporation was issued by the Wyoming Secretary of State on July 16, 1975. National Crude, Inc. was capitalized with David Ruhl's funds. David Ruhl's attorney was named the sole incorporator and director of the corporation.

During the latter part of 1975 David Ruhl directed his attorney to draw up "Minutes of the First Meeting of the Subscribers and Incorporator". These minutes bear the typewritten date of December 10, 1975. They recite that stock certificates are to be issued as follows: David Ruhl 5,200 shares; Judith Ruhl 2,400 shares; Geri L. Ruhl 2,400 shares. The minutes were drawn upon the direction of David Ruhl. The first meeting of the subscribers and incorporator was never held.

There is conflicting testimony as to whether this set of minutes was ever signed. The plaintiff testified that a copy of these minutes was signed by her husband, her daughter, the defendant (Judith Ruhl, David Ruhl's daughter by his first marriage), and herself, sometime in October or November of 1975 in the plaintiff's kitchen. Plaintiff's daughter testified that she signed the subscriber's page of the minutes, although she admitted that she was not issued any stock in the corporation. Judith Ruhl denied signing the minutes. And, the attorney who drew up the minutes stated that as a general rule he prepares minutes after the date that he sets forth as the date of the meeting. The original unsigned first set of minutes was found among the deceased's personal effects in his Arizona home, and a copy of these minutes was offered into evidence. However, David Ruhl declared in the National Crude, Inc. income tax return for 1975 that he owned 52% of the corporation's stock. At the close of the evidence, the trial judge admitted that he did not know whether the first set of minutes had been signed.

Plaintiff and David Ruhl began having marital difficulties in late 1976 and early 1977. David Ruhl contacted his attorney and directed him to prepare a new set of first minutes. The attorney inquired as to whether the original first set of minutes had been signed. Mr. Ruhl stated that he had not signed the first set of minutes. The attorney then prepared a second set of first minutes, also entitled "Minutes of First Meeting of Subscribers and Incorporator" and also dated December 24, 1975. The second set of minutes authorized the issuance of 10,000 shares of stock in National Crude, Inc. to Judith Ruhl. After picking up the second set of minutes at his attorney's office, Mr. Ruhl flew to Billings, Montana, on March 1, 1977, where he had arranged to meet his daughter. During this meeting, David Ruhl and his daughter signed the second set of minutes: David Ruhl, as chairman, and Judith Ruhl as secretary. David Ruhl was killed in a private plane crash on March 2, 1977. After the death of Mr. Ruhl, Judith met with her father's attorney and at that time a stock certificate, Certificate Number 1, was issued to her for 10,000 shares.

The defendant raises three issues on appeal:

1. The trial court erred when it held that it had in personam jurisdiction over the defendant;

2. There was not a gift of stock to the plaintiff;

3. The trial court erred in invoking the doctrine of estoppel.

■■■ Judith Ruhl contends that the trial court did not have in personam jurisdiction in the present case. She is a resident of the state of Washington and was personally served in that state. The trial court found that the defendant was properly served pursuant to § 5–1–107(a), W.S.1977, a section of the "long-arm statute." Defendant contends that the "long-arm" statute has no application because she does not

have a sufficient nexus with the state of Wyoming. We are in agreement with that contention. However, we do not agree that the present case requires in personam jurisdiction.

The owner of shares of stock is an indispensable party in an action seeking to cancel these shares. *Hodson v. Hodson Corp.*, 32 Del.Ch. 76, 80 A.2d 180, 181 (1951). Stock certificates are only evidence of ownership. The interest is held by the corporation. Therefore the situs of stock is the domicile of the issuer. This court has jurisdiction over the res because National Crude, Inc. is a Wyoming corporation. *Jellenik v. Huron Copper Mining Company*, 177 U.S. 1, 20 S.Ct. 559, 44 L.Ed. 647 (1899); *Rogers v. Guaranty Trust Company of New York*, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720 (1933). The present proceeding is a quasi in rem action, affecting only the interest of the parties in specific property. *Hodson v. Hodson Corp.*, supra, 80 A.2d at 182; *State v. District Court of Eighth Judicial District*, 79 N.M. 33, 439 P.2d 551, 552 (1968). As the United States Supreme Court stated in *Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S.Ct. 2569, 2582, 53 L.Ed.2d 683 (1977):

"* * * when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. * * *"

Furthermore, we find that for the Wyoming court to have jurisdiction, it is unnecessary for the plaintiff to have seized the property first. In order to sustain jurisdiction, the res must be in the state when the action is commenced and the complaint must specifically describe the property. *Closson v. Chase*, 158 Wis. 346, 149 N.W. 26, 28 (1914); Wright & Miller, Federal Practice & Procedure: Civil § 1070. These criteria have been met in the case at bar. Therefore we find that the service obtained on the defendant was proper and sufficient to vest the court with jurisdiction.

The second issue raised by the defendant is that the trial court erred when it ruled that the stock certificate issued to defendant is void. Plaintiff asserts that her husband made a gift of the stock to her, and therefore the second distribution of stock to his daughter is void. To constitute an inter vivos gift three elements must be present: (1) a present intention to make an immediate gift; (2) actual or constructive delivery of the gift that divests the donor of dominion and control; and (3) acceptance of the gift. *Begovich v. Kruljac*, 38 Wyo. 365, 267 P. 426, 429, 60 A.L.R. 1046 (1928); *Roth v. Roth*, Mo.App., 571 S.W.2d 659, 667 (1978). The first two elements are not present here. We find that Mr. Ruhl did not intend to make a gift to his wife, nor did he deliver the gift to her. Therefore, even though Mrs. Ruhl felt that she had accepted the gift, this in itself is not sufficient to support an inter vivos gift.

The only evidence supporting the fact that Mr. Ruhl intended to make a gift of 2,400 shares of stock in National Crude to his wife, is the testimony of his wife, and the unsigned first set of minutes. In handing down his ruling the trial judge stated, "[f]rankly, I don't know" whether the so-called original minutes were signed or not. As we noted earlier, there was conflicting testimony as to whether these minutes were in fact signed. Even viewing the evidence most favorable to the prevailing party we cannot find that the minutes were signed. Therefore we are of the opinion that there was no intent to the part of Mr. Ruhl to make a gift of stock to his wife. If he intended to give her the stock, he would have signed the minutes.

Even if we were to assume that there was an intent to make a gift of the stock, we find no evidence to support a finding that there was a delivery of the gift. Before a gift can be made, there must be property in esse: the subject matter of the gift. *Bourne v. Lord*, 19 Ariz.App. 228, 506 P.2d 268, 272 (1973). In the present case the stock certificates were never issued. There is no evidence to show that the transfer of ownership was recorded on the corporation books. A meeting of the corporate subscribers and incorporator was never

held. *Estate of Maxcy v. Commissioner of Internal Revenue*, 5th Cir., 441 F.2d 192 (1971). The only direct evidence showing that Mr. Ruhl felt that he owned 52% of the stock was National Crude's 1975 income tax return. We find this piece of evidence insufficient to support a finding that there was a delivery of the gift.

Finally, plaintiff argues that even if this court finds that there was no gift of the stock, this court should invoke the doctrine of estoppel or quasi estoppel. We cannot accept this contention. To support a claim of estoppel, the plaintiff must establish two elements: (1) there must be a lack of knowledge of facts and no means of discovering these facts; and (2) there must be detrimental reliance upon the representation. *Wood v. Trenchard*, Wyo., 550 P.2d 490, 493 (1976).

In the case at bar, plaintiff has demonstrated that she was not aware that she was not a stockholder in National Crude, Inc. However, she has not established detrimental reliance. The only testimony concerning reliance is that the plaintiff signed a few checks in payment of the corporation's bills, she signed a signature card for the corporation bank account as secretary, and she signed a written lease for a safety deposit box for the corporation. We find these acts are insufficient to reflect a change in Mrs. Ruhl's position to her detriment, and therefore we cannot adopt the doctrine of estoppel.

In the alternative, Mrs. Ruhl contends that it would be unjust for this court to allow her husband to change his mind and to give all of the stock in the corporation to his daughter. Even if we cannot find that she detrimentally relied upon her husband's representations, plaintiff contends that we should apply the doctrine of quasi estoppel. Once again we cannot agree. The doctrine of quasi estoppel has been invoked by courts to prevent an unconscionable change of position. The elements necessary for application of this doctrine are: (1) whether the party against whom estoppel is sought has gained from a change in position; (2) whether the change

in position is unconscionable; and (3) whether the first position was based upon the same information. *Jamison v. Consolidated Utilities, Inc.*, Alaska, 576 P.2d 97, 102–103 (1978).

We cannot find that Mr. Ruhl's change of position was unconscionable. National Crude, Inc. was established by Mr. Ruhl with his own funds. Therefore we do not find it unconscionable to allow Mr. Ruhl to distribute the stock in any way that he desired.

Plaintiff also contends that this court should follow the holding in *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637 (1978). In that case the court held that the failure of the corporate president to sign certificates issued to his wife, as required by the bylaws and by statute, did not invalidate the gift. The appellant and her husband entered into a subscription agreement with a newly-formed corporation. This agreement was approved by the board of directors of the corporation. The certificates were prepared by an attorney and there were receipts in the corporation stock certificate registry book. Appellant's husband, eleven years later, authorized his accountant to mark "void and not issued" upon the certificate. Appellee testified that he had originally intended to give his wife 50 shares of the stock, and that his attorney prepared the stock certificates. Furthermore, and most importantly, he had assumed that the stock had been issued at that time.

In the present case, Mr. Ruhl had not requested that his attorney prepare stock certificates in accordance with the distribution set forth in the first set of minutes. His attorney testified that he had told the attorney that the first set of minutes had never been signed. We find that the present case is distinguishable from *Ashley*, supra.

Reversed.