**Robert C. ROSE, Appellant (Respondent),**

v.

**Rosalie K. ROSE and Brenda Pscholka, as distributees under the Last Will and Testament of James Clifford Rose, deceased, Appellees (Petitioners).**

No. 92–143.

Supreme Court of Wyoming.

April 14, 1993.

John J. Maier of John J. Maier Law Offices, Torrington, for appellant.

Donald P. Prehoda, Jr. and Jeff Anthony of Corthell & King, Laramie, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

This is an appeal from a declaratory judgment action in which the district court invalidated an attempted modification of ownership of a certificate of deposit (CD). The original owner of the CD (now deceased) requested that the issuing bank add the name of his nephew, Jeffrey Rose, as joint owner. However, only the "Register Copy" of the CD, on file at the bank, was altered. Following the original owner's death, his estate brought this action to declare the CD modification invalid and to establish the estate's ownership of the CD. The district court ruled in favor of the estate.

We affirm.

## I. ISSUES

Appellant raises several issues:

A. Whether, under the applicable law of the State of Wyoming, the change of ownership of CD No. 9598 on March 27, 1990, made by the agreement of James Clifford Rose, the sole owner, and the Lingle State Bank, which added Jeffrey Rose as an owner with right of survivorship along with James Clifford Rose, was effective as between James Clifford Rose and the Bank, the issuer of the CD?

B. Whether the evidence properly before the trial court was sufficient to support that court's findings of fact and conclusions of law?

C. Whether the trial court erred in denying material portions of appellant's *Objection to Petition for Declaratory Judgment and Demand for Removal of Attorney?*

D. Whether the trial court erred when it required appellant to proceed with the trial without adequate opportunity to answer, obtain discovery or prepare for trial?

## II. FACTS

On January 10, 1983, James Clifford Rose (decedent) purchased a six month CD from the Lingle State Bank (Bank). Decedent was named as the sole depositor (owner) on the CD. The terms and conditions of the CD provided for automatic renewal for successive six month terms if the owner did not present the CD for payment on the maturity date. In addition, the front side of the CD was stamped "Not Transferable" and "Not Negotiable" in large, bold type. The terms and conditions of the CD provided:

> Payable to the depositor upon presentation and surrender of this certificate, properly endorsed, on a maturity date. * * * This Certificate and any right hereunder may not be transferred or assigned without the written consent of this institution.

Upon issuance of the CD, decedent took possession of the original CD and the Bank retained a copy, boldly printed with "Register Copy," for its own records. The Bank's copy was not an exact duplicate of the original CD because it did not include a copy of the reverse side of the original CD. The reverse side of the original CD contained spaces for a date and several signatures under the caption "ENDORSEMENT," as well as a number of contractual terms.

On March 27, 1990, decedent and his brother, Rich Rose, went to the Bank and, in the presence of the Bank president, decedent attempted to modify the ownership of the CD. Decedent, allegedly intending to place ownership of the CD in his own and his nephew's names as joint owners with rights of survivorship, had the Bank type, "and Jeffrey Rose WROS," after decedent's name on the face of the Bank's "Register Copy." Decedent, then, initialed and dated the type-written modification on the "Register Copy." The original CD, however, was never altered in any manner to signify the attempted modification of ownership.

After decedent's death, his wife, Rosalie Rose, and his son, Robert Rose, were named as personal representatives of decedent's estate. An attorney (estate's attorney) was hired by Rosalie Rose to represent the estate and decedent's will was admitted to probate. While administering the will, the estate's attorney discovered the attempted CD modification and brought a declaratory judgment action, against Jeffrey Rose, to declare the modification void and include the CD in the estate. On December 23, 1991, Jeffrey Rose executed an assignment of all his rights and interests in the CD to Robert Rose—the co-personal representative of the estate.

A number of pleadings were then filed by Jeffrey Rose and Robert Rose, alleging that Jeffrey Rose should be dismissed from the suit and replaced by Robert Rose because of the assignment of interest in the CD. In addition, Robert Rose filed a special appearance, as decedent's heir and beneficiary of decedent's will, to object to the declaratory judgment action and to have the estate's attorney removed from the action.

At a hearing on January 15, 1992, the district court dealt with all of the outstanding motions. As a result of the hearing, the district court entered an order which (1) substituted Robert Rose for Jeffrey Rose, (2) changed the parties named in the action to Robert Rose as the respondent and Rosalie Rose and Brenda Pscholka—both beneficiaries under decedent's will—as petitioners, and (3) denied Robert Rose's motion to remove the estate's attorney and Robert Rose's objection to the petition for declaratory judgment.

On January 31, 1992, a trial on the issue of the validity of the attempted CD modification occurred. On May 28, 1992, the district court entered an order, accompanied by findings of fact and conclusions of law, which voided the attempted modification of the CD and awarded ownership of the CD to decedent's estate. Robert Rose appeals from that order.

## III. DISCUSSION

Appellant, Robert Rose, argues that the 1990 modification of the "Register Copy" of decedent's CD was valid because it is governed by ordinary contract law and not by the law of negotiable instruments, as was applied by the district court. Appellant is correct in stating that this particular CD is not a negotiable instrument because it is not "payable to order or to bearer." *See Spratt v. Security Bank of Buffalo, Wyo.*, 654 P.2d 130, 135 n. 2 (Wyo.1982). However, as is evident from the decision letter of the district court, the law of negotiable instruments was not the sole basis for the district court's decision.

In part, the district court based its decision on the law of inter vivos gifts. The transaction which occurred concerning this CD properly falls within the common law principles of inter vivos gifts. *See NeSmith v. Ellerbee*, 203 Ga.App. 65, 416 S.E.2d 364 (1992) (which utilized inter vivos gift principles to void an attempted transfer of ownership of certificates of deposit).

A valid inter vivos gift requires the presence of three elements:

(1) a present intention to make an immediate gift; (2) actual or constructive delivery of the gift that divests the donor of dominion and control; and (3) acceptance of the gift.

*National Crude, Inc. v. Ruhl*, 600 P.2d 716, 719 (Wyo.1979). The district court's decision, invalidating the attempted CD ownership modification, is correct because no "actual or constructive delivery" was properly accomplished. *Id.*

In discussing delivery for purposes of an inter vivos gift, we have said:

"It is generally held that an actual delivery is necessary for the consummation of a gift either inter vivos or causa mortis when the subject of the gift is capable of manual delivery; otherwise, there must be such a delivery as the nature and situation of the subject sought to be given reasonably permits, and this delivery must clearly manifest the donor's intention to divest himself of title and possession. It is usually considered sufficient if the donor has put it in the power of the donee to take possession, or if the donee can take possession without committing a trespass."

*Carey v. Jackson*, 603 P.2d 868, 873 (Wyo. 1979) (emphasis in original omitted) (*quoting* 38 Am.Jur.2d *Gifts* § 20 at 823). Applying these principles, the *Carey* court held that several written gift agreements were sufficient to evidence an enforceable inter vivos gift. *Carey*, 603 P.2d at 877. In finding that proper delivery had occurred, that court considered the written gift agreements as contracts and found that each agreement successfully accomplished constructive delivery. *Id.* at 876.

The general nature of a certificate of deposit has been described as follows:

A certificate of deposit ordinarily constitutes in effect a promissory note. And certificates of deposit have been said to be contracts. Due to the nature of a certificate of deposit and the law relating thereto, the purchaser has a right during his lifetime to change the certificate and cause it to be payable to different parties or even to cash it in. A certificate of deposit, even if nonnegotiable, can be assigned.

5B *Michie on Banks and Banking* § 313, at 384–85 (1991 Repl.Vol.) (footnotes omitted). Previously, this court demonstrated agreement with the notion that a certificate of deposit is simply a promissory note. *Wightman v. American Nat. Bank of Riverton*, 610 P.2d 1001, 1004 (Wyo.1980). We also agree that certificates of deposit are inherently contractual and those certificates of deposit which are not negotiable instruments covered by the Uniform Com-

mercial Code shall be construed in light of general principles of contract law.

■ In light of the precepts which guide us in determining delivery for purposes of inter vivos gifts and the contract principles which govern certificates of deposit, we conclude that the attempted modification of decedent's CD is not enforceable. Because of the express terms and conditions of the CD, delivery, actual or constructive, did not occur when the Bank added "and Jeffrey Rose WROS" to its "Register Copy."

The original CD expressly provided that the certificate is, "[p]ayable to the depositor upon *presentation and surrender of this certificate, properly endorsed,* on a maturity date." (Emphasis added.) On the reverse side of the original CD, specific spaces were provided for proper endorsement. As circumstances exist today, as well as immediately after the attempted modification, neither Jeffrey Rose nor Robert Rose—after assignment—could present and surrender the original CD with proper endorsements. Decedent, while alive, always retained possession of the original CD in a safe deposit box and the CD was never altered to show the change in ownership nor endorsed by the decedent or Jeffrey Rose.

Clearly, decedent, while alive, retained full control and dominion over the disposition of this CD. After altering the "Register Copy" on March 27, 1990, decedent could have retrieved the original CD, endorsed it and presented it to the Bank for payment on the next maturity date. The Bank, based on the express terms of the CD, would have been obligated to honor the request and cash the CD. Thus, the donee, Jeffrey Rose, never had the power to take possession of the CD and there was no delivery, actual or constructive.

. Therefore, we affirm the district court's decision voiding the attempted addition of Jeffrey Rose as joint owner of the CD and declaring that the CD belongs to decedent's estate because the actions taken by decedent failed to accomplish the necessary elements of a proper inter vivos gift.

■ Appellant's second claim of error alleges that the district court's findings of fact and conclusions of law are not supported by evidence in the record. Appellant's argument is cursorily presented through bald assertions without any citation to pertinent authority. As we have held many times before, we will not consider arguments which are not cogently presented and supported by cited authority. *Matter of Adoption of BBC,* 831 P.2d 197, 202 (Wyo.1992).

■ Next, appellant argues that the district court erred in denying appellant's motion to disqualify the estate's attorney. Appellant claims that the estate's attorney should have been disqualified due to a conflict of interest. The alleged conflict stems from the fact that the appellant was a co-personal representative of decedent's estate, beneficiary of decedent's will and the defendant in this declaratory judgment action all at the same time. Rule 1.7 of the Wyoming Rules of Professional Conduct for Attorneys at Law governs conflicts of interest.

Recently, the Court of Appeals of Idaho, addressing Rule 1.7, expressed several general maxims to be followed when reviewing the denial or grant of a motion to disqualify. *Weaver v. Millard,* 120 Idaho 692, 819 P.2d 110 (1991). They said:

> The decision to grant or deny a motion to disqualify counsel is within the discretion of the trial court. * * *
>
> *     *     *     *     *     *
>
> The moving party has the burden of establishing grounds for disqualification. * * * The goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process. * * * Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client.

*Id.* 819 P.2d at 114–15. We agree that these principles, set out in *Weaver,* correctly capture the intent of the Rules of Professional Conduct and are an appropriate standard for this court to follow when reviewing the denial or grant of a motion to disqualify.

■ In light of these principles, we find that the district court did not abuse its discretion in denying appellant's motion. The district court was correct in its assessment that any conflict of interest, which may have existed, was caused by *appellant's* acceptance of Jeffrey Rose's assignment of the CD and not by any action or inaction of the estate's attorney.

Appellant's final argument claims insufficient time to answer the complaint and to prepare for the trial because the district court denied his motion for a continuance. Appellant claims that he had only sixteen days to prepare for trial because he was not made a named party until January 16, 1992 and the trial occurred on January 31, 1992. However, appellant's time-table does not accurately reflect the realities of the situation.

On December 23, 1991, appellant accepted assignment of whatever interest Jeffrey Rose held in the CD and then on December 26, 1991, appellant filed several motions in this action. Hence, on December 26, 1991, not January 16, 1992, appellant was aware that he would have to answer the complaint. We hold that appellant had ample time to answer the complaint and prepare his case.

The district court's judgment is affirmed.