Francis B. AHEARN, Appellant
(Defendant),

v.

Kathleen S. AHEARN, Appellee
(Plaintiff).

Francis B. Ahearn, Appellant
(Defendant),

v.

Chuck Lewis; and First State Bank of
Wheatland, Appellees (Plaintiffs).

Francis B. Ahearn, Appellant
(Defendant),

v.

Thomas R. Rickard; Peggy A. Rickard;
and Chuck Lewis, Appellees
(Plaintiffs).

Nos. 98–39, 98–40, 98–215.

Supreme Court of Wyoming.

Dec. 14, 1999.

Representing Appellant: Francis B. Ahearn, Pro Se.

Representing Appellees: Kathleen Ahearn and Chuck Lewis: Fred W. Phifer, Wheatland, WY, First State Bank: Stephen N. Sherard of Sherard, Sherard & Johnson, Wheatland, WY.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,JJ.*

LEHMAN, Chief Justice.

Acting *pro se,* as he did in the district court, Francis Ahearn appeals from three orders entered by that court. After consolidating these cases and reviewing Ahearn's various claims, we conclude that the district court's rulings were appropriate in all respects. We affirm.

### ISSUES

Appellant Francis Ahearn recites multiple issues in each of these cases. In case No. 98–39, he presents the following issues for our review:

I.   Can a Court Order one and only one parent to provide all of the child support for both children and not hold the other parent accountable for equal support of the children?

II.   Can a Court Order child support funds from a savings account to be returned to the savings account after the funds have been given to the children for their support when the funds have been expended in accordance with the Divorce Decree?

The appellee in case No. 98–39, Francis Ahearn's former wife, Kathleen Ahearn, states the issues in this fashion:

1.   Did Mr. Ahearn, Appellant, take the money out of his children[']s college funds in violation of the Judgment and Decree?

---

* Retired November 2, 1998.

2. Did the court err in ordering the Appellant to refund the money taken from the college funds?

In case No. 98–40, Francis Ahearn advances five issues:

I. Does a person who is NOT a party to a Divorce Decree, and who bears no legal or family relationship to either of the parties or their children have any legal standing to monitor how child support payments are to be spent on the children?

II. Does delivery of a recorded Notice of Default of an Agreement for Warranty Deed to a client's attorney constitute legal notice and due process when that client is in default, and has departed the area, and has left no forwarding address and directed the parties to conduct business through his attorney in his absence?

III. Does a bank which is serving as escrow agent and who has an obligation to account for and disburse funds to the Sellers have the right to refuse to disburse funds to the Sellers in direct opposition to the written escrow instructions?

IV. Are escrow funds that are NOT disbursed to the Sellers in accordance with the escrow instructions allowed to be construed by the Court as having been received by the Sellers when, in fact, the escrow agent's records and sworn testimony show that such funds have not been received by the Sellers?

V. Is it a conflict of interest for an attorney to represent both the Buyer and one of two Sellers in a contested escrow case where the results will clearly benefit one party and serve as a loss to the other?

One of the appellees in case No. 98–40, Chuck Lewis, condenses the issue to one:

1. Did the court err in granting Appellee's, Mr. Lewis', Petition for Declaratory Judgment and finding that Mr. Ahearn, Appellant, failed to give proper notice of default to Mr. Lewis under the 1987 Agreement for Warranty Deed?

The second appellee in case No. 98–40, First State Bank of Wheatland, believes there are two issues:

1. Did the First State Bank of Wheatland properly withhold the escrow documents and tendered payments pursuant to an agreement for Warranty Deed and escrow instructions pending consent by one of the parties or a Court Order?

2. In any event, did Appellant, Francis B. Ahearn, prove his damages as a result of the actions of the First State Bank of Wheatland?

In the third and final consolidated case, No. 98–215, Francis Ahearn tells us the issues are:

I. Does actual service of a Notice of Default delivered in person by the sheriff to a party in a civil action fulfill the requirements of service by due process?

II. If an Agreement for Warranty Deed calls for the payment of both principal and interest and there is no provision for abatement of payments of either principal and/or interest during a period of litigation, does the failure to pay principal and/or interest during and after litigation constitute a default in the terms of the Agreement?

III. Can the issue of a failure to properly account for funds in an escrow account achieve *res judicata* status when there had been incomplete testimony on the issue and when the escrow holder, as Plaintiff, claims to not be a party to the action in which the faulty conduct of the escrow was discovered and the other Plaintiff in the action refused to be present and testify at the hearings?

IV. Can an attorney represent two Plaintiffs in a civil action where one is a Buyer and one is a Seller of real property and at the same time and in the same civil action also represent one of the opposing Defendants in a Quiet Title action where the outcome will clearly only benefit the one side to the detriment of the other?

The appellee in case No. 98–215, Chuck Lewis, simply repeats Francis Ahearn's statement of the issues. The Rickards, who were party to this case in the district court, do not appear.

## FACTS

### No. 98–39 (The Divorce Case)

Francis B. Ahearn (Mr. Ahearn) and Kathleen S. Ahearn (Mrs. Ahearn) were married

in 1974. Two children were born of their union, a son in 1977 and a daughter in 1980. The couple divorced in 1992. As part of the divorce decree, Mr. Ahearn was to generally superintend the bank accounts belonging to the two children. The divorce decree provided:

> Any amounts in the savings accounts established for [son and daughter] will be used solely for their education beyond high school. All funds resulting from the Lewis contract for sale [1] on the trailer shall also be placed in a college fund. If that contract for sale goes into default and the trailer is taken back by [Mr. Ahearn], it will be resold and proceeds will be placed in the college fund.
>
> [Mrs. Ahearn] shall be given a copy of quarterly bank statements for the fund, and [Mr. Ahearn] shall consult with [Mrs. Ahearn] and get her consent regarding any expenditures from the fund.

Pursuant to the divorce decree, Mrs. Ahearn was awarded custody of the children and moved with them to Colorado. In the fall of 1993, the daughter moved back to Wheatland to live with her father. Since her return to Wheatland, the daughter has flourished under her father's care, and all parties appear to be pleased with this arrangement.

In August of 1997, Mrs. Ahearn filed a motion for order to show cause, claiming that Mr. Ahearn should be held in contempt for withdrawing $9035.00 from the children's college funds without Mrs. Ahearn's consent. At a bench trial [2] on the order to show cause, Mrs. Ahearn introduced withdrawal slips, some signed by Mr. Ahearn, indicating withdrawals from both the son's and the daughter's accounts. Bank statements established that, since March of 1993, $8,180.00 had been withdrawn from the son's account and $5,312.83 from the daughter's. Mrs. Ahearn testified that, over the years, she had consented to only three expenditures from the college accounts. Mr. Ahearn essentially admitted that he had withdrawn money from the children's accounts, but protested that

the money had been applied to meet the children's needs, especially the needs of the daughter under his care.

In its decision letter, the district court noted that, as far as the evidence showed, Mr. Ahearn had applied the money to the children's welfare. Nevertheless, the district court wrote: "the money was theirs, and not his, and should be returned to their accounts, as contemplated by the divorce Decree." The district court ordered Mr. Ahearn to refund $8,180.00 to the son's account and $5,312.83 to the daughter's account.

## No. 98–40 (The Declaratory Judgment Action)

The facts pertinent to this case are confused somewhat by multiple sales of the subject trailer home. During their marriage, the Ahearns purchased a trailer home and accompanying real estate. In April of 1987, the Ahearns sold the trailer home by entering into an Agreement for Warranty Deed with Chuck and Shirley Lewis (the Ahearn/Lewis contract). After their 1992 divorce, the Ahearns remained joint record owners of the trailer home.

In 1997, the Lewis' marriage met the same fate as the Ahearn's, and, pursuant to their divorce, Shirley Lewis quitclaimed her interest in the trailer home to Chuck Lewis. Chuck Lewis, as seller, then entered into a Contract for Warranty Deed with the Helgesons (the Lewis/Helgeson contract). Before doing so, Lewis obtained the Ahearns' consent to the sale. At this time, both the Ahearn/Lewis and the Lewis/Helgeson contracts remained in effect.

Like their predecessors, the Helgesons' marriage did not endure, and they were divorced in November of 1997. During the tumultuous time preceding the Helgesons' divorce, no payments were made on the Ahearn/Lewis contract for three months. On August 19, 1997, Mr. Ahearn sought to default Lewis on the Ahearn/Lewis contract. Mr. Ahearn recorded a Notice of Default with the Platte County Clerk and hand-deliv-

---

1. This contract is the subject of the dispute in No. 98–40 and will be more fully discussed therein.

2. In the district court, this action was consolidated with the declaratory judgment action (case No. 98–40), and the cases were tried together.

ered a copy of the notice to Lewis' attorney. He also mailed of copy of the Notice of Default to the Helgesons. On September 19, 1997, Mr. Ahearn recorded a Notice of Termination of Agreement in which he asserted that the Ahearn/Lewis contract was "Terminated Due to Default as of midnight September 22, 1997."

On September 23, 1997, Mr. Ahearn wrote a letter to the Ahearn/Lewis escrow agent, the First State Bank of Wheatland (Bank). The letter asserted that the Ahearn/Lewis contract had been terminated and requested the escrow be closed and no more payments be received. Two days later, Lewis tendered $675 to the Bank to cure any delinquency. Because Mr. Ahearn had instructed the Bank not to accept any more payments on the Ahearn/Lewis contract, the Bank simply held onto the payment.

Lewis filed suit on September 30, 1997, seeking a declaration that Mr. Ahearn's notice of default was invalid. Lewis also joined the Bank as a party. Mr. Ahearn filed a resistance to Lewis' petition and made claims against both Lewis and the Bank. Mr. Ahearn alleged that the Bank had acted improperly by failing to disburse the funds from the escrow to the children's accounts and/or by failing to close the escrow.

After a bench trial, the district court agreed with Lewis that Ahearn's notice of default was defective, specifically finding the notice failed to comply with the terms of the agreement in two respects: (1) Ahearn had failed to send the notice by certified mail and (2) the notice was not sent to Lewis at the address specified in the Agreement. Besides declaring the notice of default invalid, the district court also ruled the Bank had not acted improperly in administering the escrow.

### No. 98–215 (The Quiet Title Action)

After the district court issued its decision letter in the preceding two cases, Mr. Ahearn again attempted to default Lewis on the Ahearn/Lewis contract. On October 16, 1997, Mr. Ahearn recorded another notice of default. He also sent, by certified mail, a copy of the notice to Lewis at an address in Jamestown, North Dakota, but the notice went undelivered.

In the meantime, Lewis defaulted the Helgesons on the Lewis/Helgeson contract. On November 6, 1997, Lewis sold the trailer again, this time to the Rickards. This sale accelerated payments on the Ahearn/Lewis contract, and on the same day Lewis tendered the balance of Ahearn/Lewis contract to the bank. Again, because the bank had been instructed by Mr. Ahearn not to receive any more payments, it simply held Lewis' payment.

The day after Lewis tendered payment, Mr. Ahearn engaged the sheriff to serve process, and the sheriff personally served Lewis with the notice of default. To bring some order to this chaos, the district court, recognizing that Lewis intended to bring an action to quiet title, entered an Order Preserving the Status Quo on January 5, 1998. As expected, Lewis, along with the Rickards, brought the action to quiet title, naming the Ahearns among the defendants.

After a May 4, 1998, bench trial, the district court found that Lewis had satisfied the Ahearn/Lewis contract by tendering the full amount owed, thus extinguishing the Ahearns' interest. The district court ordered the payments tendered by Lewis ($6,926.42) be paid over to the Ahearns in satisfaction of the contract for deed. Under the terms of the divorce decree, this money is to be deposited in the children's college fund accounts. Finally, because Lewis was the only party who could provide a record of his interest in the property, the district court quieted title in Lewis.

Ahearn timely appeals each of these rulings. Upon our own motion, we have consolidated the three cases.

### STANDARD OF REVIEW

The factual findings of a judge are subject to a broader scope of review than a jury verdict, and the appellate court may examine all of the properly admissible evidence in the record. *Springer v. Blue Cross & Blue Shield,* 944 P.2d 1173, 1175–1176 (Wyo.1997); *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). How-

ever, the court's findings are presumptively correct and will not be set aside unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* The court's conclusions of law are reviewed de novo. *Id.*

## DISCUSSION

### No. 98–39 (The Divorce Case)

In this case, the only question is whether the district court properly determined that Mr. Ahearn violated the divorce decree when he withdrew, without Mrs. Ahearn's consent, money from the children's accounts. The record amply supports the district court's determination. First, the record reveals that Mrs. Ahearn did not consent to the bulk of these withdrawals. Mrs. Ahearn's testified that she had consented to expenditures from the accounts on only three occasions; any other expenditures were without her consent. The evidence also confirms that withdrawals were made. Besides the withdrawal tickets bearing Mr. Ahearn's signature, Mrs. Ahearn introduced exhibits establishing forty-four withdrawals from the son's account and forty-three withdrawals from the daughter's account. With this evidence, the record clearly supports the district court's conclusion that money was removed from the children's accounts without Mrs. Ahearn's consent, contrary to the terms of the divorce decree.

Mr. Ahearn argues that any money that was withdrawn was spent on the children and, therefore, he should not be made to refund it. However, even if we assume that Mr. Ahearn applied the money to the children's needs, there is no evidence that Mrs. Ahearn consented to these expenditures. While Mr. Ahearn is not completely unsympathetic because of his professed devotion to his children, it must be remembered that he was bound to abide by the terms of the divorce decree. When he failed to do so, the district court was well within its powers in ordering Mr. Ahearn to refund money to the children's accounts. *Hurd v. Nelson,* 714 P.2d 767, 771 (Wyo.1986).

Mr. Ahearn also complains that the amount he was ordered to refund is incorrect. Under the terms of the divorce, the children's accounts were to be funded from payments by Lewis under the Ahearn/Lewis contract. Ahearn contends that, since the divorce, only $9034.67 was paid under the contract for deed, and the order to refund $13,492.83 is thus implausible. To explain this discrepancy, Ahearn theorizes that he "might have" deposited money in the accounts over the years. However, when given the opportunity to prove that he had deposited money in the accounts and then withdrawn the same money, Ahearn did not come forward with any evidence to support his theory. Even if Mr. Ahearn had been able to substantiate his theory, he was bound to obtain Mrs. Ahearn's consent before making the expenditures from the college fund accounts. Moreover, nothing in the divorce decree precluded the children, their parents, or any other benefactors from making deposits to the college funds. Regardless, where the money came from was immaterial under the terms of the divorce decree. Any expenditures were subject to Mrs. Ahearn's consent. As discussed above, this consent was never obtained. Because Mrs. Ahearn presented evidence to support the amounts withdrawn without her consent, we conclude that the district court's determination in this respect was correct. The order appealed from in case No. 98–39 is affirmed.

### No. 98–40 (The Declaratory Judgment Action)

In this case, the first issue is whether Mr. Ahearn's notice of default was sufficient under the terms of the Ahearn/Lewis contract. The district court specifically found that Mr. Ahearn's notice to Lewis did not comply with the terms of the agreement in two respects: (1) Ahearn had failed to send the notice by certified mail, and (2) the notice was not sent to the address specified in the Agreement for sending notices.

In reviewing Mr. Ahearn's claim, there are several principles that guide us. It is well established that this court generally does not favor forfeiture of contractual

rights. *Wilson v. Witt,* 952 P.2d 214, 216 (Wyo.1998); *Treemont, Inc. v. Hawley,* 886 P.2d 589, 594 (Wyo.1994). Where the parties' intentions regarding default are clearly set forth in an agreement, we will not rewrite a default provision:

> [A]fter competent parties have solemnly contracted and agreed to certain conditions, courts should exercise restraint in nullifying the terms thereof or rewriting the contract. It is said that this is "a dangerous jurisdiction which should not be extended." It does not extend so far as to authorize a court of equity to disregard and set aside a valid stipulation of the parties upon the performance of which their rights are made to depend in the absence of some equitable basis.

*Wilson v. Witt,* 952 P.2d 214, 216 (Wyo.1998) (quoting *Younglove v. Graham & Hill,* 526 P.2d 689, 692 (Wyo.1974) (citations omitted)).

Despite Mr. Ahearn's protests that the service of process on Lewis' attorney was sufficient, the contract clearly establishes a method for providing notice of default. Under the contract's terms, Mr. Ahearn was required to serve notice upon Lewis by certified mail at a certain Wyoming address. The record reflects that Mr. Ahearn did not mail the notice. Instead, he hand delivered a copy of the notice to Lewis' attorney. With these facts in evidence, the record amply supports the district court's conclusion that Ahearn's notice of default was not valid under the terms of the contract. To permit Ahearn to achieve service on the attorney would require us to ignore the express terms of the contract, a "dangerous jurisdiction" we decline to extend in this case.

■ Mr. Ahearn's third and fourth issues encompass his complaints against the Bank and will be treated together. Ahearn essentially complains that the Bank, while acting as escrow agent, improperly refused to disburse funds (the payments tendered by Lewis) to the children's accounts. We disagree.

The Bank was subject to the following instruction in regard to the Ahearn/Lewis escrow account:

> 8. In accepting any funds, securities or documents delivered hereunder, it is agreed and understood that in the event of disagreement between the parties hereto, the Escrow Agent will, and does, reserve right to hold any money in its possession, and all papers in connection with or concerning this Escrow, until a mutual agreement has been reached between all of said parties or until delivery is legally authorized by final judgment or decree of court.

Clearly, in this case, the Bank was simply holding the payments tendered by Lewis until the dispute between Ahearn and Lewis was resolved. Indeed, the record reflects that Mr. Ahearn had requested that the Bank not accept any more payments from anyone on the escrow. Thus, Mr. Ahearn is ill-situated to argue that the Bank improperly failed to disburse funds to the children's college accounts. We affirm the district court's order in No. 98–40. Mr. Ahearn's issue regarding attorney conduct coincides with his fourth issue in case No. 98–215 and will be addressed in the final section of this discussion.

### No. 98–215 (The Quiet Title Action)

In this case, the question is whether title to the trailer home and accompanying property was appropriately quieted in Lewis. After reviewing Mr. Ahearn's three arguments that pertain to this issue, we conclude that it was.[3]

■ In performing our review of this case, we are faced with the problem that often arises when the record on appeal does not include the transcript from a proceeding. According to the district court's decision letter, a trial was held in this matter on May 4, 1998. Included in the record on appeal are the exhibits from this trial, but the transcripts, if any, from the trial are not included. We have often stated that we expect *pro se* litigants to comply with the Wyoming

---

**3.** The order quieting title, which appears to have been prepared by Lewis' attorney, states that Lewis obtained title to the property by adverse possession. However, the district court's deci-

sion letter, which is incorporated into the order, does not rely on adverse possession. The order is obviously erroneous in this respect, and we will rely on the decision letter.

rules of appellate procedure in the same way that trained lawyers are expected to perform. *Hamburg v. Heilbrun,* 889 P.2d 967, 968 (Wyo.1995); *Korkow v. Markle,* 746 P.2d 434, 435 (Wyo.1987). It is the appellant's burden to bring us a complete record on which to base a decision. *Stadtfeld v. Stadtfeld,* 920 P.2d 662, 663 (Wyo.1996). When no transcript has been made of trial proceedings, this court accepts the trial court's findings as being the only basis for deciding the issues which pertain to the evidence. *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d 769, 771 (Wyo.1995); *Armstrong v. Pickett,* 865 P.2d 49, 50 (Wyo.1993). In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings. *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d at 771; *Osborn v. Pine Mountain Ranch,* 766 P.2d 1165, 1167 (Wyo.1989).

■ Mr. Ahearn first argues that his second notice of default against Lewis was valid and served to extinguish Lewis' interest in the property. The record shows that Mr. Ahearn recorded the notice of default on October 16, 1997, and the sheriff achieved service on Lewis on November 7, 1997. The district court's opinion letter indicates that on November 6, 1997, one day before he was served by the sheriff, Lewis tendered the remainder of the Lewis/Ahearn to the Bank. Because Mr. Ahearn presents nothing to refute the district court's finding that there was no default, we must conclude that the district court correctly determined that the second notice of default, although sufficient to provide Lewis with notice of any alleged default, was of no effect because there was no default under the Ahearn/Lewis contract.

■ Mr. Ahearn next contends that Lewis failed to make payments of principal and interest pending litigation, and this constitutes a default under the Ahearn/Lewis contract. This argument overlooks a number of important facts. First, Lewis had paid the full amount due under the contract to the Bank. Because Ahearn asked that the Bank not apply any payments to the escrow account, the Bank simply held the funds. Thus, any alleged default by Lewis was a result of Ahearn's refusal to accept payments from Lewis. This refusal by Ahearn was in contradiction to the order of the district court in the declaratory judgment action where the court determined that the first notice of default was insufficient. Under these circumstances, it can hardly be said that the Ahearn/Lewis contract was in default. Quite the contrary, Lewis tendered full payment on the contract, and the funds were eventually paid to Ahearn after the quiet title action was resolved. Again, we uphold the district court's conclusion on this issue.

In his third issue, Mr. Ahearn argues that the funds due under the Ahearn/Lewis contract were miscalculated by both the escrow agent and the district court. To the extent that the claim challenges the district court's determination that the Ahearn/Lewis contract has been satisfied, further review by this court is warranted. Mr. Ahearn's argues that, due to miscalculations by the district court and the Bank, he has been short changed by approximately $11,000 on the Ahearn/Lewis contract. Delving into the specifics of the alleged miscalculation, we see that the Ahearn/Lewis contract recited a $23,000 purchase price, but called for interest to accrue on only $13,000 of the purchase price. The remaining $10,000 of the purchase price was not to accrue interest. A problem arose because the escrow instructions indicated that the entire $23,000 purchase price was to accumulate interest. This problem was resolved when the parties to the Ahearn/Lewis contract (including Mr. Ahearn) executed an Addendum to Agreement for Warranty Deed on April 30, 1997, in which they acknowledged that the balance due under the Ahearn/Lewis contract was only $7,216.57 as of April 2, 1997. In its decision letter, the district court wrote that Mr. Ahearn's arguments were "based, however, on an interest miscalculation in the original escrow documents—a miscalculation that is and has been well-known and obvious to everyone, and which provides no legitimate justification for Ahearn's demands." According to a letter from the Bank's attorney, the full amount due under the contract on November 5, 1997 was $6,926.42. Be-

cause Mr. Ahearn fails to provide a record to refute the district court's finding that this amount was correct, and because the addendum and the letter support its propriety, we conclude that the district court properly determined that the Ahearn/Lewis contract had been satisfied by the payment of $6,926.42.

### Conflict of Interest

█ Finally, in an issue common to case No. 98–40 and case No. 98–215, Ahearn contends that the opposing attorney acted improperly by representing both Lewis and Mrs. Ahearn in these actions. The same attorney represented Mrs. Ahearn in case No. 98–39 (the divorce case), Mrs. Ahearn and Lewis in case No. 98–40 (the declaratory judgment action), and plaintiff Lewis in case No. 98–215 (the quiet title action). Mrs. Ahearn was named as a defendant in No. 98–215 (the quiet title action), but she was not an active litigant in the case. Although she filed an Answer and Counterclaim, she later withdrew this pleading.

Mr. Ahearn contends that the attorney who represented Lewis and Mrs. Ahearn had an impermissible conflict of interest, citing Wyoming Rules of Professional Conduct 1.7, 1.8, and 1.9. In response, Lewis argues Mr. Ahearn does not have standing to raise this issue. Lewis premises his standing argument on the lack of an attorney-client relationship between Mr. Ahearn and the attorney in question.

On the issue of standing, we have stated that:

> The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in which the litigants have little or no interest in vigorously advocating. * * * A litigant is said to have standing when he has a "personal stake in the outcome of the controversy." This personal stake requirement has been described in Wyoming as a "tangible interest" at stake.

Robinson v. Hamblin, 914 P.2d 152, 154 (Wyo.1996) (quoting Schulthess v. Carollo, 832 P.2d 552, 556–57 (Wyo.1992) (citations omitted)).

In Robinson v. Hamblin, 914 P.2d at 154, the plaintiff in a personal injury case (Robinson) argued that the defendant's insurance company should not have been allowed to provide the defendant (Hamblin Jr.) with legal representation. We disagreed, determining that Robinson did not have standing to pursue such a claim: "Since Hamblin Jr. was an opposing party in this suit, Robinson has no 'tangible interest' in Hamblin Jr.'s right to legal representation." Id.

Like the plaintiff in Robinson v. Hamblin, Mr. Ahearn has no tangible interest in either Mrs. Ahearn's or Lewis' choice of counsel. We acknowledge some courts recognize that a party who is not a former client may maintain a motion to disqualify if that party is able to show that the alleged conflict adversely affected the interest of the party seeking disqualification. Lavaja v. Carter, 153 Ill.App.3d 317, 106 Ill.Dec. 147, 505 N.E.2d 694, 700 (1987); Hawkes v. Lewis, 255 Neb. 447, 586 N.W.2d 430, 436 (1998). However, even if we assume that a conflict exists, Mr. Ahearn has neither alleged nor established that his rights were prejudiced by the dual representation of Mrs. Ahearn and Lewis. Therefore, Mr. Ahearn has failed to bear his burden to establish that disqualification of counsel is warranted. Rose v. Rose, 849 P.2d 1321, 1325 (Wyo.1993).

### CONCLUSION

After a review of Mr. Ahearn's claims, we conclude that the district court's orders should be affirmed in all respects. The district court was sympathetic to Ahearn's plight as a pro se litigant, and afforded him every appropriate courtesy. For this, the district court should be commended. Affirmed.